## THE PEOPLE *v.* THOMAS KING.

PLEADING IN CRIMINAL ACTIONS.—The criminal code of California has worked the same change in pleading in criminal actions which has been wrought by the civil code in civil cases.

INDICTMENT FOR MURDER.—In an indictment for murder it is not necessary to aver the means by which the homicide was committed, or the nature and extent of the wound, or the part of the body upon which it was inflicted.

STATEMENT OF DEGREE OF MURDER IN INDICTMENT. — An indictment for murder should not designate the degree of the murder. If the indictment does state the degree of the murder, it does not vitiate it, but the statement of the degree may be treated as surplusage.

IMPLIED BIAS OF JUROR.—In order to render a juror called in a criminal case incompetent on the ground of implied bias, it must appear that he entertains a fixed and settled conviction of the guilt or innocence of the defendant, or that he has expressed such conviction.

CHARGE OF JUDGE ON WEIGHT OF EVIDENCE.—Under our Constitution the Judge, in his charge to the jury, cannot express his opinion upon the weight of evidence. He may, however, state the evidence to the jury, and declare the law resulting from the facts proven, and when there is no evidence as to a particular fact or issue, he may so state to the jury.

CHARGE OF JUDGE ON EVIDENCE.—If on a trial for murder there is no evidence of facts and circumstances such as would, under the law, reduce the crime charged to manslaughter, the Judge may so inform the jury, and may charge them that they cannot consider the question of manslaughter.

CHARGE OF COURT PRESUMED CORRECT UNLESS ERROR SHOWN.—If there is no statement or bill of exceptions embodying the evidence, or declaring its purport and tendency, the appellate Court will presume in favor of the correctness of the charge of the Judge to the jury, unless the charge is manifestly erroneous under any and every conceivable state of facts.

INTOXICATION WHEN HOMICIDE IS COMMITTED. — If on a trial for murder there is evidence to show that the defendant was intoxicated when the homicide was committed, the jury may consider the evidence of intoxication, not in extenuation or excuse of the crime, but for the purpose of determining the degree of the crime.

REFUSAL OF AN INSTRUCTION.—It is not error to refuse an instruction asked when the same has already been given in substance.

APPEAL from the District Court, Ninth Judicial District, Siskiyou County.

The following is a copy of the indictment in this case :

" *The People of the State of California* against *Thomas King.*

" In the Court of Sessions of the County of Siskiyou and State of California, October Term, A. D. 1863.

" Thomas King is accused by the Grand Jury of the County of Siskiyou aforesaid by this indictment of the crime of mur-

der of the first degree, committed as follows : The said Thomas King, on the second day of July, A. D. 1863, at the County of Siskiyou and State of California, in and upon one James Duffy, feloniously, wilfully, and of his malice aforethought, did make an assault and did then and there feloniously, wilfully, and of his malice aforethought, cut, stab, and wound him the said James Duffy, and did then and there give him the said James Duffy one mortal wound, of which said mortal wound the said James Duffy afterwards, on the second day of July, A. D. 1863, did die. So the grand jurors aforesaid, upon their oaths, do say, that the said Thomas King, on the said second day of July, A. D. 1863, at the said County of Siskiyou and State of California, feloniously, wilfully, and of his malice aforethought, did kill and murder the said James Duffy, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the People of the State of California."

On the trial, Jesse Davis was called as a juror. On examination as to his qualifications as a juror, he made the following answers to the following questions :

1*st Question*—" Have you heard what purported to be a statement of facts of this case ? "
*Answer*—" I have heard what purported to be a statement of the facts from different persons."
2*d Question*—" Do you believe the statements true you heard ? "
*Answer*—" I believed the statements heard, judging from the character of the men who told those statements to me."
3*d Question*—" From the statements you heard, have you formed or expressed an unqualified opinion as to the guilt or innocence of the defendant ? "
*Answer*—" I have formed an opinion."
4*th Question*—" Do you still entertain the same opinion ? "
*Answer*—" I do still entertain the same opinion."
5*th Question*—" Would it require evidence to remove or change the opinion you entertain ? "

*Answer*—"It would require evidence to change my opinion in regard to the guilt or innocence of the prisoner."

*6th Question*—"Do you believe these reports sufficiently strong to act on them in your common business transactions?"

*Answer*—"I believe them as much as I believe any reports that I hear, or as much as I could believe any reports."

The defendant then challenged the juror for implied bias.

The juror also stated, in answer to the District Attorney, that he would not be willing to act on his opinion, and that he could not decide on the guilt or innocence of the defendant without hearing the evidence on the trial, and that he could and would decide the case impartially without reference to what he had heard or the opinion he had formed, and that the only credit he had given to the reports was that of hearsay reports not made under oath, which would not weigh in his mind against testimony of witnesses given in under oath.

The Court disallowed the challenge, and the counsel for defendant excepted.

The defendant was convicted of murder in the first degree, and appealed.

The other facts are stated in the opinion of the Court.

*J. Berry*, for Appellant.

*J. G. McCullough, Attorney-General*, for the People.


By the Court, SANDERSON, C. J.

The objections to the indictment are not well taken. There is some conflict in the decisions in this State as to what must be alleged in an indictment for murder. Some of the cases go so far as to hold that the essential averments of an indictment under our criminal code are the same as at common law, and that therefore a statement of the manner of the death and the means by which it was effected is indispensable. (*People v. Wallace*, 9 Cal. 30 ; *People v. Cox*, 9 Cal. 33 ; *People v. Lloyd*, 9 Cal. 54.) In other cases it has been held that our criminal

code changes in many respects the rule of the common law, and dispenses with the statement of many facts and circumstances connected with the killing which were usual and perhaps indispensable at common law. (*People* v. *Stevenson*, 9 Cal. 273 ; *People* v. *Dolan*, 9 Cal. 576.) In the former case it was held that a description of the weapon used was not necessary, and it was not material to describe the wound further than by the use of the word mortal, nor the part of the body upon which it was inflicted. And it seems that it is not necessary to aver in terms that the wound was mortal, for if the facts stated show that such was the fact (as that the party died of the wound) the indictment in that respect is sufficient. (*People* v. *Judd*, 10 Cal. 313.)

Our criminal code was designed to work the same change in pleading and practice in criminal actions which is wrought by the civil code in civil actions. Both are fruits of the same progressive spirit which, in modern times, has endeavored at least to do away with the mere forms and technicalities of the common law which were productive of no good, and frequently brought the administration of justice into contempt by defeating its ends. Under the pretense of informing the defendant of the nature of the charge against which he was called upon to defend, it was necessary, at the ancient common law, to describe the means by which the homicide was committed, and the nature and extent of the wound and its precise locality; from which it necessarily followed that a trifling variance between the proof and the allegation frequently defeated a conviction, no matter how manifest the guilt of the defendant. It was a long time before legislators and Judges discovered that this rule had nothing but the most flimsy pretext to support it. If the defendant is guilty, he stands in need of no information to be derived from a perusal of the indictment, as to the means used by him in committing the act or the manner in which it was done, for as to both his own knowledge is quite as reliable as any statements contained in the indictment. If he is not guilty, the information could not aid in the preparation of his defense. A disposition to relax much of this

ancient strictness in criminal proceedings has manifested itself
in modern practice, and in harmony therewith the Legislature
of this State has substituted, in the place of the old, a new
system of practice and pleading, which retains all the ele-
ments of the former so far as they are made necessary by a
due regard for the substantial rights of a defendant, but dis-
cards all such elements as serve no good purpose, and only
tend to embarrass and defeat the administration of justice.
That system provides a few plain and simple rules by which
to determine the sufficiency of pleadings, and declares that
such rules shall be the test. (Section 235.) Those rules are
found in section two hundred and forty-six, and in order to
ascertain whether an indictment is sufficient or not, it is only
necessary to interrogate it by the light of that section. The
present indictment stands this test in every particular : 1. It
is entitled in a Court having authority to receive it. 2. It was
found by a Grand Jury of the county in which that Court
was held. 3. It gives the name of the defendant. 4. It
shows that the crime alleged was committed within the juris-
diction of the Court. 5. It declares that the offense was com-
mitted at a time prior to that at which the indictment was
found. 6. It sets forth the act charged as the offense clearly
and distinctly in ordinary and concise language, without repe-
tition and in such a manner that any person can know and
understand therefrom what is intended ; for it alleges that the
defendant—stating his name—at a place named, and at a time
mentioned which was prior to the finding of the indictment,
with malice aforethought assaulted one James Duffy, and did
cut and stab the said James Duffy, giving him a mortal wound,
of which he afterwards died on the same day, and therefore
within a year and a day from the time when the mortal thrust
was received, which is all that is necessary to constitute the
offense of murder, and sufficiently identifies the act, to guard
the defendant against a second prosecution, and, as provided
in the seventh and last subdivision of the section in question,
states the same with sufficient certainty to enable the Court
to pronounce a judgment. The indictment is not bad because

it does not allege that James Duffy was a human being, nor that he had a body, nor the part of his body upon which the wound was inflicted. The first two never were necessary, and the last is not now, whatever it may have been formerly. If there is any objection to the indictment, it is found in the fact that it designates the degree of the murder. While this does not make the indictment bad, and may be treated as surplusage, still the indictment ought not, because it need not, state the degree of the murder. The trial jury, and not the Grand Jury, determine the degree of the crime, and the former should not be embarrassed by the opinion of the latter.

The Court did not err in disallowing the challenge interposed by the defendant to the juror Jesse Davis upon the ground of implied bias. In order to render a juror incompètent on the ground of implied bias, it must appear that he entertains a fixed and settled conviction of the guilt or innocence of the defendant, or that he has expressed such a conviction. Whatever falls short of this does not amount to an unqualified opinion within the meaning of the statute. Admitting that Davis had formed an opinion—which in view of all his answers taken together is extremely doubtful—it certainly was not an unqualified, but on the contrary, a conditional or qualified opinion. The law upon this branch of the case will be found very fully discussed by Mr. Justice Baldwin, in *The People* v. *Reynolds*, 16 Cal. 130. (See also, *People* v. *Williams*, 17 Cal. 142 ; and *People* v. *Mahoney*, 18 Cal. 180.)

It is next claimed that the Court erred in giving the following instruction :

" In the case that is now being submitted to you there is no evidence on any points or matters given in proof which reduce the crime charged in the indictment to manslaughter ; if the defendant be found guilty, therefore, you cannot consider the question of manslaughter upon the evidence in this case."

This instruction is not a little obscure, and if it was given as represented in the transcript, it is quite possible that the jury may have found some difficulty in determining its exact

meaning. The record does not contain the evidence, or any part thereof, and we cannot, therefore, read the instruction in the light of the testimony, in view of which it was given, but are forced to determine its meaning by its own terms. If there was any evidence before the jury tending, however slightly, to reduce the homicide to the grade of manslaughter, this instruction was erroneous. If the expression "there is no evidence on any points or matters given in proof," is to be understood as admitting that there were "points and matters given in proof" which, if true, would reduce the offense to manslaughter, but declaring the evidence as to such points or matters to be insufficient to warrant the jury in finding them to be true, it was erroneous, because it assumed to pass upon the weight of evidence, which, under our Constitution, is left entirely to the jury, and in regard to which the Judge, contrary to the rule of common law, is not allowed to express an opinion. On the other hand, if there was a total absence of all testimony as to such facts and circumstances as would, under the law, reduce the offense from murder to manslaughter, and the instruction is to be understood as declaring such to be the case, then it was not erroneous, because Judges, although not allowed to charge juries with respect to matters of fact may state the testimony and declare the law. (Sec. 17, Art. VI, of the Constitution.) At common law a Judge is allowed to express his opinion as to the weight of evidence. (*Commonwealth* v. *Child*, 10 Pick. 252.) In this respect the constitutional provision referred to was intended to change the rule so as to leave the weight of the evidence entirely to the jury; but Judges may still, as formerly, state what facts are in evidence and what are not; or in other words they may state the evidence *pro* and *con*, in view of which the existence of certain facts is affirmed or denied, which includes the right to state to the jury that there is no evidence as to particular facts or issues, when such is the case. Counsel for defendant seem to have understood the Judge as instructing the jury that there was no evidence as to facts which, under the law, would reduce the offense charged to manslaughter, and to have ex-

65

cepted to the instruction upon that ground, so understood—there being no evidence of the character in question—the instruction was not erroneous.

It is proper, however, to add, in this connection, that in the absence of any statement or bill of exceptions embodying the evidence, or declaring its purport or tendency, so far as may be necessary to point the exception, we must presume in favor of the action of the Court below, upon the principle that the party who alleges error must show it. This, however, must be taken with the qualification that where the action of the Court below is manifestly erroneous under any and every conceivable state of facts, this Court will review it, notwithstanding the evidence may not have been brought up. (*The People* v. *Levisen,* 16 Cal. 98.)

It appears, from the instructions given by the Judge of his own motion, that there was evidence before the jury tending to prove that the defendant was intoxicated at the time the homicide was committed. In view of this evidence certain instructious were asked on the part of the defense to the effect that so far as the degree of murder is concerned no presumption arises from the mere fact of the killing considered apart from the means used and the circumstances under which it occurred; and that in determining the question of premeditation it was proper for the jury to take into account the defendant's condition, as drunk or sober. These instructions were evidently taken from the case of *The People* v. *Belencia,* 21 Cal. 544, and ought therefore to have been given, unless already given in substance, for as to the law of that case there can be no question. Where the homicide is not committed by means of poison, lying in wait, or torture, or in the perpetration or the attempt to perpetrate arson, rape, robbery, or burglary, the degree of the offense depends entirely upon the question whether the killing was wilful, deliberate, and premeditated, and upon that question it is proper for the jury to consider evidence of intoxication, if such there be, not upon the ground that drunkenness renders a criminal act less criminal, or can be received in extenuation or excuse, but upon

the ground that the condition of the defendant's mind, at the time the act was committed, must be inquired after in order to justly determine the question as to whether his mind was capable of that deliberation or premeditation which, according as they are absent or present, determine the degree of the crime.

The Court below does not seem to have questioned the law of the defendant's instructions, but refused to give them upon the ground that they had been already given in substance. Upon inspection of the instructions given by the Court, we are satisfied that the law, as declared in the instructions under consideration had already been given in language, perhaps, better adapted to the comprehension of the jury, and hence the ruling of the Court was not erroneous. We add, however, that in such cases it is better to give the instructions asked, than to refuse, for by such refusal a pretext is afforded for an appeal which otherwise, perhaps, would not be taken.

The judgment is affirmed and the Court below directed to appoint a day for the execution.