Points decided.

# THE PEOPLE *v.* TIMOTHY CRONIN.

Indictment for Murder—Averment of What Facts Sufficient.—Where, in an indictment for murder, the averment was that the homicide was committed "by some means, instruments, and weapons to the Grand Jury unknown," the indictment was held sufficient.

Idem—Indictments Generally.—Indictments, in matter of averment, are sufficient if they allege all the acts or facts which have been used by the Legislature in defining the particular offense charged.

Idem.—Under the provisions of the statute, that "all the forms of pleading in criminal actions, and the rules by which the sufficiency of pleadings is determined, shall be those prescribed by this Act," (Criminal Practice Act, Sec. 235,) the bench and bar must search in the provisions of the statute for the form of an indictment and for the rules by which its sufficiency shall be determined, rather than in the common law.

Indictment for Murder.—Under the provisions of section nineteen of the Act concerning crimes and punishments, and section two hundred and thirty-nine of the Criminal Practice Act, the crime of murder, which must be stated in the indictment with directness and certainty, consists in the killing of a human being unlawfully, with malice aforethought; the manner and means of its accomplishment need not be stated, because not necessary to constitute a complete offense.

Form of Indictment for Murder.—An indictment containing a statement of the venue, together with the formal commencement prescribed by section two hundred and thirty-eight of the Criminal Practice Act, which avers according to this form, to wit: "That A. B., on the 29th day of July, 1866, at the County of Marin, within said State, feloniously, willfully, and of his malice aforethought did kill and murder C. D.," etc., contains all the ultimate or issuable facts, and all that need be stated, under our system, in an indictment for murder.

Instructions—Circumstantial Evidence.—Where the Court below instructed the jury that "in order to convict, circumstantial evidence should be such as to produce *nearly* the same degree of certainty as that which arises from direct testimony, and to exclude a rational probability of innocence :" *held*, that it was not error.

Circumstantial Evidence.—Where the evidence is entirely circumstantial, yet is not only consistent with the guilt of the defendant, but inconsistent with any other rational conclusion, the law makes it the duty of the jury to convict, notwithstanding such evidence may not be as satisfactory to their minds as the direct testimony of credible eye witnesses.

Idem—Caution Concerning, to Jury by Court.—Where counsel for defense made persistent attacks, before the jury, upon circumstantial evidence as furnishing insufficient proof of crime to justify convictions, founded upon those rare cases of conviction of innocent persons thereon, to be found in the books : *held*, that it was the duty of the Court to caution the jury against attaching too much importance to the teachings of such cases.

Error for which Judgment will be Reversed.—Where, upon review of the alleged errors on appeal relied on for reversal of a judgment of conviction, it appeared to this Court that the law had not been misrepresented, or the jury

misled to the prejudice of the defendant : *held*, that the judgment should be affirmed.

CHARGE TO JURY AS TO CREDIBILITY OF DEFENDANT AS WITNESS.—Where the Court instructed the jury in respect to the weight and effect proper to be given to defendant's evidence, who had testified at the trial in his own behalf, that "in addition to noticing his manner and the probability of his statements, taken in connection with the evidence in the cause, you should consider his relation and situation under which he gives his testimony, and the consequences to him, relating from the results of this trial, and all the inducements and temptations which would ordinarily influence a person in his situation. * * * If convincing, and carrying with it a belief in its truth, act upon it ; if not, you have a right to reject it :" *held*, that there was no error.

PROOF OF THREATS.—On a trial for murder, proof of threats against deceased, by defendant, although made long prior to the commission of the homicide, was admissible to show malice. In such case, its competency was unaffected by the lapse of time, although its weight may have been impaired thereby.

APPEAL from the District Court, Seventh Judicial District, Marin County.

The defendant was indicted by the Grand Jury of Marin County of murder. The first count of the indictment was as follows, to wit :

" The said Timothy Cronin is accused by the Grand Jury of the County of Marin, State of California, by this indictment of the crime of murder, committed as follows, to wit : The said Timothy Cronin, on the eighteenth day of July, A. D. eighteen hundred and sixty-six, and prior to the finding of this indictment, at the County of Marin, State of California, in and upon Julia Cronin, unlawfully, feloniously, and of his malice aforethought did make an assault; and the said Timothy Cronin, with some means, instruments and weapons to the jurors unknown, the said Julia Cronin in and upon the body and the left side of the head of the said Julia Cronin, then and there feloniously, willfully, and of his malice aforethought did strike and beat ; the said Timothy Cronin giving to said Julia Cronin then and there, and thereby, to wit : with the means, instruments and weapons aforesaid, in and upon the body and left side of the head of the said Julia Cronin, divers mortal bruises, of

which said mortal bruises the said Julia Cronin then and there died, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of California."

The defendant demurred to said count on the grounds: First—That it did not contain a statement of the acts constituting the offense which it proposed to set forth, in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what was intended. Second—It did not contain the particular circumstances of the offense charged necessary to constitute a complete offense. Third—It did not state the acts constituting the offense therein attempted to be charged.

The demurrer was overruled by the Court, and defendant excepted. The following is a portion of the charge of the Court to the jury, to the giving of which defendant at the time duly excepted, to wit:

" Presumptive evidence is admissible in criminal prosecutions as well as in civil cases; the modes of reasoning and of drawing conclusions from facts are the same. When direct evidence cannot be produced, minds will form their judgments on circumstances and act on the probabilities of the case. . As mathematical or absolute certainty is seldom to be obtained in human affairs, reason and public utility require that Judges and all mankind, in forming their opinion of the truth of facts, should be regulated by the superior number of probabilities on the one side or the other, whether the amount of these probabilities be expressed in words or arguments, or by figures and numbers. The principal difference to be remarked between civil and criminal cases with reference to the modes of proof by *direct* or circumstantial evidence, is that in the former, where civil rights are ascertained, a less degree of probability may be safely adopted as a ground of judgment than in the latter case, which affects life and liberty.

" In order to convict, the circumstantial evidence; should be such as to produce *nearly* the same degree of certainty as that which arises from *direct* testimony, and to exclude a rational probability of innocence. The circumstances ought to be of such a nature as not to be reasonably accounted for on the supposition of the prisoner's innocence, but perfectly reconcilable with the supposition of the prisoner's guilt.

" If the killing of Julia Cronin by the defendant has been proved, the burden of proving circumstances of mitigation, or that justify or excuse the homicide, will devolve on the accused, unless the proof on the part of the prosecution sufficiently manifests that the crime committed only amounts to manslaughter, or that the accused was justified or excused in committing the homicide.

" In case of admissions shown to have been made by the defendant, you are at liberty to believe a part of such admissions, such as you believe to be true, and to reject other parts of such admissions as you may believe, from such admissions or from other evidence in the cause, to be untrue, and disregard such statements made by the defendant as you deem from the evidence to be unworthy of belief."

The following instructions were given to the jury by the Court at the request of the District Attorney, to the giving of which the defendant at the time duly excepted :

" The term 'reasonable doubt' is a term often used— probably pretty well understood—but not easily defined. It is not mere possible doubt, because everything relating to human affairs and depending on moral evidence is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge. The burden of proof is upon the prosecutor. All the presumptions of law, independent of evidence, are in favor of innocence; and every man is presumed to be innocent until he is proved

guilty. If, upon such proof, there is reasonable doubt remaining, the accused is entitled to the benefit of it by an acquittal, for it is not sufficient to establish a probability, though a strong one arising from the doctrine of chances, that the fact charged is more likely to be true than the contrary; but the evidence must establish the truth of the fact to a reasonable and moral certainty; a certainty that convinces and directs the understanding, and satisfies the reason and judgment of those who are bound to act conscientiously upon it.

" This we take to be proof beyond reasonable doubt, because if the law, which mostly depends upon considerations of a moral nature, should go further than this, and require absolute certainty, it would exclude circumstantial evidence altogether.

" The jury must be satisfied from the evidence of the guilt of the defendant, beyond a reasonable doubt, before they can legally find him guilty of the crime charged against him; but in order to justify the jury in finding the defendant guilty of said crime, it is not necessary that the jury should be satisfied from the evidence of his guilt beyond the *possibility of a doubt.* All that is necessary in order to justify the jury in finding the defendant guilty, is that they shall be satisfied from the evidence of the defendant's guilt to a moral certainty and beyond a reasonable doubt, although they may not be entirely satisfied from the evidence that the defendant and no other or different person committed the alleged offense; and if the jury are satisfied from the evidence, beyond a reasonable doubt, that the defendant committed the crime charged against him, they are not legally bound to *acquit* him because they may not be *entirely satisfied* that the defendant and no other or different person committed the alleged offense.

" The defendant has offered himself as a witness on his own behalf on this trial, and in considering the weight and effect to be given his evidence, in addition to noticing his manner and the probability of his statements taken in con-

nection with the evidence in the cause, you should consider his relation and situation under which he gives his testimony, the *consequences* to him relating from the result of this trial, and all the *inducements* and *temptations* which would ordinarily influence a person in his situation. You should carefully determine the amount of credibility to which his evidence is entitled; if convincing and carrying with it a belief in its truth, act upon it; if not, you have a right to reject it.

" The counsel for the prisoner has read and recited a number of cases wherein convictions have been sought and had upon strong circumstances of guilt proved against the accused in those cases, and afterwards it has transpired that the accused was innocent, notwithstanding the strong circumstances shown against him. These cases read and recited are *extreme* cases, and probably do not occur but very seldom in cases decided upon circumstantial evidence. The quotation of such cases is proper in order to make the jury careful in arriving at a proper conclusion from such evidence, but the plain, practical rules of evidence which have been established for ages ought not to be shaken, because of the *recital* of *extreme* cases, wherein improper convictions have been had; and if much search be made, it would be found that probably a *greater* number of cases might be cited wherein improper convictions have been *had from direct positive evidence*, through inattention or perjury of witnesses. All human testimony is fallible; but jurors in their decisions must take and consider circumstances, and, if sufficient, act upon them, although the *main fact* is proved by no eye witness.

" Cases have been read to you by counsel wherein Judges have commented upon the testimony of the witnesses, and expressed their opinions upon its sufficiency to convict, stating to the jury that the evidence was almost as strong as positive proof. Under the law in the country where these opinions were given at that time, the Judges had a right to give to the jury their opinions as to the effect of the evi-

dence; while under our law in this State the Judge has no right to express an opinion upon the evidence, but the whole weight and effect of the evidence must be left entirely to the jury, without the opinion of the Court as to what verdict they should render.

"As I conclude, I admonish you to calmly consider the evidence before you. The interest of the community and of the defendant demands your best efforts truly to decide from the evidence. The amount of credence to be given to the different witnesses is entirely with you. You have a right to look at their surroundings, their bearing on the stand, and have a right to reject such parts of the testimony of any of them as is contradicted by other witnesses or other circumstances, showing that they are not reliable."

The defendant was convicted and sentenced for murder in the first degree. A motion for a new trial was made on the grounds, among others, that the Court erred in overruling said demurrer, and in giving said instructions to the jury. The motion was denied, and the defendant appealed from the judgment and from the order denying a new trial.

*Elisha Cook*, and *Alexander Campbell*, for Appellant.

I. The Court erred in overruling the demurrer to the first count of the indictment. This count is the same as if it had merely said, Timothy Cronin killed Julia Cronin feloniously, etc., but in what manner is not known. It is a mere conclusion; not a fact is stated—no wound of any kind, nor how the deceased was found, or where; not even the condition of her remains; in fact, nothing is stated advising the defendant as to what preparation it was necessary to make in defense. If it was alleged that she was poisoned, he could have had her disinterred, and her stomach analyzed; if a gun shot wound, that he never had weapons about him; if a blow or cut, he could have summoned physicians to show that such a blow or cut would not produce death; if from strangulation, he would have prepared to meet that

charge. But not a fact is stated, and the defendant is called upon to defend his life, without knowing what is charged against him.

This indictment cannot be sustained upon logic or reason, and much less by authority. There is but one precedent for it, and that is the celebrated *Webster Case*, (5 Cush. 295,) which was not tried by any fixed and well settled rules; but all rules of law and precedent were made to bend, yield, and give way, for the purpose of insuring his conviction. There cannot be a precedent for it, and it cannot be sustained, unless we override well settled principles, and utterly disregard the letter and spirit of our statute. (Hittell's Dig., Art. 1,826, Sec. 239.) "The indictment must be direct and certain as it regards:" (Sub. 2,) "The offense charged," (Sub. 3,) "The particular circumstances of the offense charged, when they are *necessary* to constitute a complete offense."

To hold, then, that an indictment containing no fact is sufficient, *because* the Grand Jury *could not ascertain* the facts, is simply begging the question. If the Grand Jury could ascertain that the defendant committed the deed, it could have set forth the facts upon which such a finding was predicated, without which the indictment stands with simply the fact alleged that defendant committed the murder. The District Attorney could, under our statute, if there was any doubt as to the precise mode in which death was produced, have found as many counts as the exigency of the case required.

II. The Court erred in its charge to the jury, respecting circumstantial evidence, and the consideration to which it is entitled by the jury. There is no evidence in this case but circumstantial, there being no positive proof whatever. What is the proposition, then, submitted to the jury, taking the entire charge? First, "you must acquit if there is a *reasonable doubt* of the defendant's guilt; but where, as in this case, the evidence is *circumstantial*, it does not require so *complete* proof of the defendant's guilt as where the evidence produced is *direct*. If the evidence in such a case is *nearly*

as conclusive, as to the guilt of the defendant, as if it were *direct,* you *may convict,* and you can get rid of a reasonable doubt upon this theory."

Again, the Court erred in the instructions given in respect to " a reasonable doubt." First, the Court *assumes* that some person has committed the offense charged in the indictment —not only *an* offense, but the *particular* offense, and only leaving it to the jury to say whether the defendant is the guilty party; that is, " whether he or some other derson did the act." This, we insist, is diverting the minds of the jury from one of the main questions, viz: whether, in fact, the crime of murder, as charged, was committed by any one.

Again, we have never before heard it announced as a proposition of law that a party could be convicted of crime, particularly of murder, if the jury were not *entirely* satisfied of his guilt. What are a jury to infer from a charge which says: you cannot convict if there is a reasonable doubt; but you need not be *entirely satisfied* to *legally justify you* in convicting? We submit that the charge is inconsistent, and well calculated to mislead a jury.

We claim that the Court also erred respecting the weight and consideration proper to be given to defendant's testimony. The laws of California permit a prisoner to be a witness in his own behalf, and every presumption is in favor of his telling the truth. But here the rule is changed; we find the Court making an uncalled for *attack* upon the witness, and argued, saying to the jury that no man is entitled to credit, or they must be looked upon with suspicion, and his evidence is wholly unsatisfactory and unreliable, if by lying he can save his neck from the halter or his person from incarceration in the State Prison.

Whatever opinions men or Judges may entertain upon this subject, they have no right, when acting as Judges, to usurp the province of the jury by poisoning their minds with their peculiar notions upon the subject. The Judge intimated to the jury, as strong as language could, that he, the Judge, did not believe a word the defendant had testi-

fied. A Judge might as well select any other witness in a case and criticise his testimony, or have expressed in terms his opinion as to the defendant's guilt. Here the Judge makes the assault upon the defendant's evidence, singles it out, and makes it figure as a pointed and prominent part of his charge. (*People* v. *Jones*, 32 Cal. 80; *Thornton's Executors* v. *Thornton's Heirs*, April Number, 1867, Am. L. Reg. 357.)

III. The Court erred in permitting the prosecution to prove, under the defendant's exceptions, threats made nearly a year prior to the alleged killing.

*J. G. McCullough, Attorney-General,* for the People.


By the Court, SANDERSON, J.:

The averment that the homicide was committed "by some means, instruments and weapons to the Grand Jury unknown," is sufficient. The only reason assigned by the common law why the manner and means by which the homicide was committed should be stated in the indictment, was that the defendant might be fully informed as to the case against him, and thereby enabled to prepare for his defense. As we had occasion to remark in the case of *The People* v. *King*, 27 Cal. 510, this reason of the common law was but a flimsy pretext, for if the defendant was guilty, he stood in no need of information as to the means by which he committed the crime; and if not guilty, the information that he did the act in a particular way, or by the use of particular means, could not assist him in the preparation of his defense. Hence, in the legislation of this State, and in the practice of this Court, the rules of the common law, in respect to indictments, have been more and more relaxed as occasion has suggested. Thus it has been held that a description of the weapon is not necessary, (*People* v. *Stevenson*, 9 Cal. 273,) and that it is not material to describe the wound, further than to say that it was mortal, or that the

party died of the wound. (*People* v. *Judd*, 10 Cal. 313.) While it may be well to state the means by which death was caused, we do not consider such a course indispensable. The killing is the ultimate and issuable fact, and we can perceive no satisfactory reason why the means by which it was done should be stated in every case, and certainly not in a case where the means are unknown. In this case, as yet, the means by which the homicide was committed lie mainly in conjecture. True, the Grand Jury might have multiplied counts until all possible modes and means of inflicting death yet discovered had been described; but to what good purpose? The defendant, in that case, would have obtained no valuable information. He would have been as little informed as to the real means as he is by the present indictment; and yet the one or the other course must be adopted, where the means are unknown, for the criminal cannot be allowed to escape justice because the precise means by which the crime was committed cannot be discovered.

In the celebrated case of *The Commonwealth* v. *Webster*, 5 Cush. 295, the indictment contained four counts. In the first it was alleged that the homicide was committed by stabbing with a knife; in the second by a blow on the head with a hammer; in the third by striking, kicking, beating and throwing on the ground; and in the fourth, " in some way and manner, and by some means, instruments and weapons, to the jury unknown." The last count was held to be good on demurrer; and we think the ruling was consistent with reason and not opposed to any rule of law.

II. The Court did not err in instructing the jury that " in order to convict, circumstantial evidence should be such as to produce *nearly* the same degree of certainty as that which arises from direct testimony, and to exclude a rational probability of innocence." It was but another mode of telling the jury that, although as a general rule circumstantial evidence, in the nature of things, may not be so entirely satisfactory proof of a fact as the positive testimony of credible

26

eye witnesses, yet they must convict, if they were satisfied of the guilt of the defendant to the exclusion of all rational probabilities. There are instances in which circumstantial evidence may be found to produce as strong a conviction of the defendant's guilt, if not stronger, than could be produced by the most direct and positive testimony; yet it is certainly true, as a general proposition, that the latter is the most satisfactory in the estimation of mankind. The Court did but recognize this general principle while telling the jury that they were bound to find the defendant guilty upon circumstantial evidence, if it was of such a character as to satisfy them of his guilt to the exclusion of any other rational theory, and in doing so the Court seems to have adopted the precise language of the books. (1 Phillips on Evidence, 10th English and 4th American edition, 113 *et seq.*) If the same absolute certainty of conviction which is generally produced by the direct and positive testimony of credible eye witnesses was required in cases of circumstantial evidence, verdicts of guilty would be rare and murder frequently go unpunished. Where the evidence is entirely circumstantial, yet is not only consistent with the guilt of the defendant, but inconsistent with any other rational conclusion, the law makes it the duty of the jury to convict, notwithstanding such evidence may not be as satisfactory to their minds as the direct testimony of credible eye witnesses would have been.

Nor do we see any substantial objection to the remarks of the Court to the jury in relation to those extreme cases of circumstantial evidence, where there had been convictions, and it had afterwards transpired that the parties were innocent, which had been read to them by counsel for the defendant. Those cases having been read to the jury, and commented upon at length by counsel for the purpose of creating in their minds a distrust of the kind of evidence upon which the prosecution was forced to rely, it was competent for the Court to caution them against the alleged dangerous tendency of circumstantial evidence, claimed by

counsel to be demonstrated by those cases. The same course was pursued by the Circuit Court of the United States at the trial of Tom Jones (2 Wheeler's Criminal Law Cases, 461.) In his charge to the jury, Mr. Justice Thompson said: "A number of cases have been cited and read to show you the dangerous tendency of this kind of proof. It is possible that an innocent person may have suffered, but such cases (if any such there are) could be no objection to this kind of evidence; if jurors were to disregard it, there would be an end to the administration of law and to government."

When counsel for the defense make a persistent attack upon this kind of proof, and undertake to establish its alleged dangerous tendency by reference to those rare cases where it is shown that innocent persons have been found guilty upon circumstantial evidence, and by such a course may have shaken the confidence of inexperienced jurors in a species of testimony which, notwithstanding all that can be urged against it, is, in the judgment of those most experienced in the investigation of truth and the administration of justice, not unfrequently as entirely satisfactory—if not more so—than the positive testimony of individuals, it is not only competent for the Court, but the Court would stop short of a performance of its duty to the cause of justice if it failed to caution the jury against attaching too much importance to the teachings of such cases, and to remind them of the true character and weight which, as all human experience shows, ought at all times to be accorded to the voiceless yet eloquent testimony of circumstances.

The remarks of Mr. Justice Park, in his charge to the jury in the case of *The King v. John Thurtell*, are a just and eloquent tribute to the true character of circumstantial evidence, and would not have been out of place in this case. He said: "The eye of Omniscience can alone see the truth in all cases; circumstantial evidence is there out of the question; but clothed as we are with the infirmities of human nature, how are we to get at the truth without a concatena-

tion of circumstances ?   Though in human judicature, imperfect as it must necessarily be, it sometimes happens, perhaps in the course of one hundred years, that in a few solitary instances, owing to the minute and curious circumstances which sometimes envelop human transactions, error has been committed from a reliance on circumstantial evidence ; yet this species of evidence, in the opinion of all those who are most conversant with the administration of justice and most skilled in judicial proceedings, is much more satisfactory than the testimony of a single individual who swears he has seen a fact committed." (2 Wheeler's Crim. L. Ca. 462, note.)

What has been said thus far is also a sufficient answer to the objections made to the charge of the Court upon the subject of reasonable doubts.   As we consider, they amount to nothing more than hypercriticism.   Doubtless more apt language could have been employed, but it rarely happens that such is not the case ; nor, in view of the circumstances under which charges are given, and the brief space allowed for their consideration and preparation, is it surprising that it should be so.   If we were to reverse judgments because we find ourselves able, upon full examination and mature reflection, to improve upon what the Court below has said— which, under like circumstances, doubtless, the Court below could itself do—there would be no end to new trials.   We can go no further than to see that the law has not been misrepresented or the jury misled to the prejudice of the defendant.

The instruction of the Court in relation to the credibility of the defendant, who offered himself as a witness, was in all respects legal and proper.   We do not agree with the learned counsel for the defendant in holding that it is not competent for the Court to single out a particular witness and charge the jury as to his credibility.   On the contrary, the less abstract the more useful the charge.   Jurors find but little assistance in the charge of a Judge who deals only in the general and abstract propositions which he supposes to

be involved in the case, and leaves the jury to apply them as best they may. The application is sometimes more difficult than the statement of the rule; hence, that is the most useful charge in which the Judge takes up separately the theories, or each reasonable hypothesis, advanced by counsel or suggested by the testimony, and applies to it the law. In this way, what otherwise might be obscure to the jury is made clear and easy of comprehension. It seldom happens that the exigencies of a case bring in question the credibility of all the witnesses, and when they do not there can be no reason why the charge upon that subject should be made so general as to embrace them all. In our judgment, such a course would be likely to cast suspicion where none is due, and thus tend to mislead the jury. Hence, the Judge should confine his charge to those whose credibility has been assailed by counsel or is clouded by the circumstances of the case.

In *Tom Jones' Case, supra,* a witness was produced, on the part of the prosecution, who had been convicted of larceny, and had been sentenced to the State Prison, and had served out his time, but had been pardoned by the Executive of the State for the purpose of making him a witness against the prisoner. The Court called the attention of the jury to the infamy of his character, and told them that although he had become a competent witness by the force and effect of the pardon of the Executive, yet his credibility was a matter for their consideration, and that they ought not to believe him unless corroborated by other witnesses.

But independent of these general considerations, the statute by which defendants in criminal cases are made competent witnesses in their own behalf expressly sanctions the course pursued in this case. (Statutes 1865–6, p. 865.)

The testimony as to the threats made by the defendant was competent, notwithstanding they were made a long time prior to the commission of the homicide. Testimony of that character was admissible for the purpose of showing malice, and its competency is unaffected by the lapse of

time, though its weight may be impaired. As was said in the case of *The State* v. *Ford*, 3 Strobhart, 517, note, " remoteness of time, where the party has made declarations pointing to a guilty intention, cannot render the evidence incompetent. For years may roll over a felon's head while he is arranging his schemes or while the guilty thought conceived in his mind is ripening into the deliberate purpose with which crime is committed." In that case there had been a lapse of two and four years. To the same effect is the case of *Keener* v. *The State*, 18 Geo. 228.

The remaining points do not require special notice.

Judgment affirmed.

*Alex. Campbell,* and *Elisha Cook,* for Appellant, on petition for rehearing.

The case of *The People* v. *King*, 37 Cal. 510, cited in the opinion of the Court, lays down a rule which, we respectfully submit, cannot be carried into effect without subverting fundamental principles which are vital to the protection of life and liberty. Let us see where it leads us. The Court say : " The only reason assigned by the common law, why the manner and means by which the homicide was committed should be stated in the indictment, was that the defendant might be fully informed as to the case against him, and thereby enabled to prepare for his defense. As we had occasion to remark in the case of *The People* v. *King*, 27 Cal. 510, this reason of the common law was but a flimsy pretext, for, if the defendant was guilty, he stood in no need of information ; and if not guilty, the information, that he did the act in a particular way, or by the use of particular means, could not assist him in the preparation of his defense." We assert that this doctrine is as dangerous as it is novel. The assertion, that an innocent man is as well prepared to defend himself when the particulars of the act with which he is charged are withheld from him, as when they are specified in the indictment, refutes itself. The

" flimsy pretext " of the common law has not only, until very recently in isolated cases, been sanctioned, cherished, and adopted by all wise and good Judges, but it has lived in the hearts of all just men. We ask, how can an innocent man, charged generally with murder, defend himself? Is he to come prepared to show that he did not administer poison to the deceased, or choke him to death, or shoot him, or stab him with a knife, or decoy him off a precipice, or lure him to destruction by false lights, or destroy him in any other way whatever, by which death may be effected? Is he, in the solitude of his prison, perhaps friendless and destitute, to hang over an indictment—useless to him as a means of information—and puzzle his brain in idle conjectures on the nature and character of the accusation? Is he to be called on to meet one hundred issues, when one, two, or three are all sufficient for the purposes of justice?

If there is a doubt in the minds of the Grand Jury as to which of two causes may have occasioned death, two counts may be inserted in the indictment, charging two separate modes of committing the offense. This decision gives to the defendant less rights than he would have in a civil case. If, in a civil action, the complaint avers that plaintiff sold and delivered goods to the defendant, the latter has a right to a bill of particulars, containing the items of the account, so that he may prepare for the trial. If A. seeks to recover from B. property obtained by false pretenses, it is not sufficient for the complaint to allege that B. fraudulently and by false pretenses obtained the property from A.; but the pretenses made, the means by which the ultimate fact— the obtaining of the property—was accomplished, must be alleged, and proved as alleged. It is just as rational to say, that the particular pretenses by which the property was obtained are immaterial, and leave the defendant to grope in the dark to discover what may be proved against him, as to say that it is immaterial to state in an indictment for murder the means by which death was produced. In a criminal case, the defendant has no right to a bill of particu-

lars, but the indictment has, heretofore, been supposed to serve that purpose. We earnestly hope the Court will reconsider the question we have presented, and at least modify the doctrine laid down in *People* v. *King*, and indorsed in this case.

By the Court, SANDERSON, J., on petition for rehearing:

It is important that what are material and what immaterial averments in an indictment for murder should be finally settled, if not already so; and we are not sorry that counsel have assailed the doctrine announced in *King's Case*, 27 Cal. 510, and in this, for we are thus afforded a speedy opportunity of repeating that in our judgment the reason assigned by the common law why the manner and means by which the homicide was committed should be stated in the indictment was without any substantial foundation, and that under our system of criminal practice and pleading the rule of the common law in that respect has been wisely abolished. For centuries it aided criminals in escaping the penalty of crime, to the great reproach of the law, without affording any assistance in the administration of justice.

From the start this Court has uniformly held, in respect to indictments generally, that they are sufficient, in matter of averment, if they allege all the acts, or facts which have been used by the Legislature in defining the particular offense charged. It has so held, because such has been considered to be the rule adopted by the letter and spirit of the statute, by which proceedings in criminal cases are regulated. Section two hundred and thirty-five of that statute expressly provides that " All the forms of pleading in criminal actions, and the rules by which the sufficiency of pleadings is determined, shall be those prescribed by this Act." If it is possible for the law-making department of the Government, in the face of the conservatism of the legal profession, which is too often blind, we fear, to abolish old forms and rules and establish new, it would seem to have been done by the

Legislature of this State.   To this conclusion the profession must come, and it must search in the provisions of the statute for the form of an indictment and for the rules by which its sufficiency is to be determined rather than in the common law, for such is the will of the Legislature.   The legislation of this State is undoubtedly an innovation upon the common law, but it is not for that reason to be condemned without a trial.   An obstinate adherence to custom is more pernicious than cautious experiment.   But if this change be unwise in the estimation of counsel, it must nevertheless be enforced by the Courts.   In our estimation it introduced a salutary and much needed reform.   The idea that the forms and rules of a hundred years ago cannot be improved, which seems to be entertained by some, must be addressed, if at all, to the Legislature.   That body has the power to restore the forms and rules of two centuries ago ; this Court neither has the power nor the desire.   In the administration of justice, as in all else, a wise progress is better than blind conservatism.   Not yet has it attained its highest perfection, it is to be hoped, much less had it done so a hundred years ago.   If it had, then are those who go before wiser than those who come after, the human understanding is not progressive, and mankind learn nothing from the teachings of experience—the mother of all wisdom.

Section two hundred and thirty-nine provides that the indictment shall be direct and certain as to the party charged and as to the offense charged ; but that the particular circumstances need not be stated unless they are necessary to constitute a complete offense.   " Murder is the unlawful killing of a human being, with malice aforethought, either express or implied."   The unlawful killing may be effected by any of the various means by which death may be occasioned.   (Act concerning crimes and punishments, Sec. 19.) Killing a human being unlawfully, with malice aforethought, is the offense, and must be stated.   How and by what means it was done are the particular circumstances, and need not

27

be stated, for no particular mode or means are necessary to constitute the offense. That the statute dispenses with a statement of the mode and means by which death was occasioned, in view of these provisions, would seem to be too clear for controversy.

Counsel have characterized the doctrine announced in *King's Case* as novel, and dangerous to human life and liberty. Were this true it would not be the fault of this Court, as we have seen. But it is neither novel nor dangerous. A reform made necessary in the judgment of the legislators and Judges of England, after centuries of experience, need not inspire counsel with apprehensions of danger to life and liberty, nor need they be startled by the novelty of a doctrine which was announced more than seventeen years ago by one of the most eminent of American jurists, not under the influence of popular excitement, as suggested by counsel, but, as we believe, under the guidance of that nice discrimination for which he was remarkable and by the aid of which he rarely failed, if ever, to distinguish between chaff and wheat—sophistry and logic. ( *Webster's Case,* 5 Cush. 295.)

The following form is now used in England, and is there regarded as being all that is requisite, in trials for murder, to secure a just and impartial administration of the law :

" Gloustershire, to wit : The jurors of our Lady the Queen, upon their oath, present that A. B., on the 10th day of July, 1866, feloniously, willfully, and of his malice aforethought, did kill and murder C. D." (American Law Review for October, 1867, p. 192.)

With the formal commencement prescribed by our statute, and the venue added, this form, in our judgment, contains all that need be stated in an indictment for murder under our system, and all that should be required under any system. It contains all the ultimate or issuable facts. All other facts are merely probative, and should no more be stated in an indictment than in a complaint in a civil action.

Upon the other points discussed in the petition we find no

occasion to add anything to what we have said in our former opinion.

Rehearing denied.

Mr. Justice Rhodes expressed no opinion on petition for rehearing.