

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1889-11

**DAVID LEN MOULTON, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON STATE'S PETITION FOR DISCRETIONARY REVIEW
FROM THE SIXTH COURT OF APPEALS
CASS COUNTY**

**COCHRAN, J., filed a concurring opinion.**

O P I N I O N

I agree that the trial judge did not err when he instructed the jury on the "unknown" manner and means of committing murder. I write separately because I believe that this area of law has become overly formalistic and divorced from its original purpose of giving notice to the defendant.

The common-law rule[1] of including an allegation of a "manner and means unknown

---

[1] Although the Code of Criminal Procedure requires the State to include a description of unknown persons and property, as well as a statement that the precise name of the person or

to the grand jury" in an indictment when no one knows exactly how an offense was committed ensures that the State gives the defendant as much notice as it can about its theory of how the crime was committed. The rule discourages the State from either hiding evidence from the grand jury or conducting a lackadaisical investigation before seeking a grand jury indictment. As was explained in the 1883 case, *Walker v. State*, the State need not allege the specific manner and means by which the defendant purportedly murdered someone if the indictment states that the "murder was committed 'in some way or manner, and by some means, instruments and weapons, to the [grand] jurors unknown.'"[2]

Few Texas cases explain the purpose or genesis of this policy, but one of the cases that the *Walker* court relied on was *People v. Cronin*,[3] an 1867 California Supreme Court decision

---

property is unknown to the grand jury, in its indictments, there is no such statutory requirement for the unknown "manners and means" by which an offense is committed. *See* TEX. CODE CRIM. PROC. arts. 21.08 & 21.09.

[2] 14 Tex. App. 609, 627 (1883).

[3] 34 Cal. 191 (Cal. 1867). Cronin had argued that
[t]he Court erred in overruling the demurrer to the first count of the indictment.

This count is the same as if it had merely said, Timothy Cronin killed Julia Cronin feloniously, etc., but in what manner is not known. It is a mere conclusion; not a fact is stated–no wound of any kind, nor how the deceased was found, or where; not even the condition of her remains; in fact, nothing is stated advising the defendant as to what preparation it was necessary to make in defense. If it was alleged that she was poisoned, he could have had her disinterred, and her stomach analyzed; if a gun shot wound, that he never had weapons about him; if a blow or cut, he could have summoned physicians to show that such a blow or cut would not produce death; if from strangulation, he would have prepared to meet that charge. But not a fact is stated, and the defendant is called upon to defend his life, without knowing what is charged against him.

. . .

in which the "flimsy" historical purpose for the rule was addressed:

> The only reason assigned by the common law why the manner and means by which the homicide was committed should be stated in the indictment, was that the defendant might be fully informed as to the case against him, and thereby enabled to prepare for his defense. As we had occasion to remark in the case of *The People v. King*, . . . this reason of the common law was but a flimsy pretext, for if the defendant was guilty, he stood in no need of information as to the means by which he committed the crime; and if not guilty, the information that he did the act in a particular way, or by the use of particular means, could not assist him in the preparation of his defense. Hence, in the legislation of this State, and in the practice of this Court, the rules of the common law, in respect to indictments, have been more and more relaxed as occasion has suggested.[4]

> To hold, then, that an indictment containing no fact is sufficient, *because* the Grand Jury *could not ascertain* the facts, is simply begging the question. If the Grand Jury could ascertain that the defendant committed the deed, it could have set forth the facts upon which such a finding was predicated, without which the indictment stands with simply the fact alleged that defendant committed the murder. The District Attorney could, under our statute, if there was any doubt as to the precise mode in which death was produced, have found as many counts as the exigency of the case required.

*Id.* at 197-98.

[4] *Id.* at 200.  The California Supreme Court further explained:

> Thus it has been held that a description of the weapon is not necessary, (*People v. Stevenson*, 9 Cal. 273) and that it is not material to describe the wound, further than to say that it was mortal, or that the party died of the wound. (*People v. Judd*, 10 Cal. 313.) While it may be well to state the means by which death was caused, we do not consider such a course indispensable. The killing is the ultimate and issuable fact, and we can perceive no satisfactory reason why the means by which it was done should be stated in every case, and certainly not in a case where the means are unknown. In this case, as yet, the means by which the homicide was committed lie mainly in conjecture. True, the Grand Jury might have multiplied counts until all possible modes and means of inflicting death yet discovered had been described; but to what good purpose? The defendant, in that case, would have obtained no valuable information. He would have been as little informed as to the real means as he is by the present indictment; and yet the one or the other course must be adopted, where the means are unknown, for the criminal

It took more than 100 years, but now the Texas indictment rules have also been relaxed, both by constitutional amendment and by statute.[5]

The original rule was simple in theory and in practice:  If, after making a diligent inquiry, the grand jury cannot determine precisely what was the manner (the *actus reus*–

---

cannot be allowed to escape justice because the precise means by which the crime was committed cannot be discovered.

*Id.*  The California Court also referred to the "famous" 1850 *Webster* case from Massachusetts, in which the Massachusetts Supreme Court explained the common-law "unknown manner and means" indictment rule:

To a person unskilled and unpractised in legal proceedings, it may seem strange that several modes of death, inconsistent with each other, should be stated in the same document. But it is often necessary; and the reason for it, when explained, will be obvious. The indictment is but the charge or accusation made by the grand jury, with as much certainty and precision as the evidence before them will warrant. They may be well satisfied that the homicide was committed, and yet the evidence before them may leave it somewhat doubtful as to the mode of death; but, in order to meet the evidence as it may finally appear, they are very properly allowed to set out the mode in different counts; and then if any one of them is proved, supposing it to be also legally formal, it is sufficient to support the indictment.

. . .

The rules of law require the grand jury to state their charge with as much certainty as the circumstances of the case will permit; and, if the circumstances will not permit a fuller and more precise statement of the mode in which the death is occasioned, this count conforms to the rules of law. I am therefore instructed by the court to say, that, if you are satisfied upon the evidence, that the defendant is guilty of the crime charged, this form of indictment is sufficient to sustain a conviction.

*Commonwealth v. Webster*, 59 Mass. (5 Cush.) 295, 322-23 (Mass. 1850).

[5] *See generally Studer v. State*, 799 S.W.2d 263, 267 (Tex. Crim. App. 1990) (setting out prior cases and noting that, before the 1985 constitutional and legislative changes, "[a] substance defect was considered 'fundamental error' since a charging instrument with such a defect failed to confer jurisdiction upon the trial court, and any conviction had upon that instrument was therefore void. Also apparent from the caselaw is that this Court has used the terms 'substance defect,' 'fundamental error,' and 'fatally defective' interchangeably when addressing errors in charging instruments which led to void convictions.").

shooting, poisoning, hitting, stabbing, strangling) of the offense or the means (the instrument–gun, sword, knife, hands, manhole cover) that the offender used to commit the offense, just say so in the indictment. Do the best you can; that is good enough. In the past, we should not have made a mighty mountain out of a pleading molehill. We do not do so in these times.

If the defendant is flummoxed by the failure to have greater notice, he may file a motion to quash the indictment and put the State to its burden to show that it still does not know the precise manner and means. If the State does have more information about the manner and means (or at least has a more precise range of possibilities), then it must give the defense notice of that evidentiary information. If, at the motion to quash hearing, it turns out that the State now knows exactly what manner and means it intends to prove, the trial judge may order the State to amend the indictment or seek a new one that is more specific.

Regardless of whether the defendant files a pretrial motion to quash the indictment, if the evidence at trial clearly establishes a specific manner and means, or a combination of various alternatives, then the judge should omit the "unknown" language in his jury charge. Instead, as the majority states, the jury charge should be written to give the jury a choice from the limited list of possibilities regarding manner and means.[6] If, after considering all of the evidence adduced, the precise manner and means still cannot be identified, as in this case,

---

[6] Majority op. at 12 (noting that, in *Sanchez v. State*, 376 S.W.3d 767 (Tex. Crim. App. 2012) (op. on reh'g), there was a "limited list of known alternatives" that could explain the victim's cause of death).

the judge should leave the "unknown" language in the jury charge. Here, no one, including the medical examiner, could be certain of the specific manner of Rebecca Moulton's death; it was "some sort of asphyxia," but that was as good as the witness and the science could tell. If the precise manner and means cannot be determined by the medical examiner, then we have to be satisfied that the manner and means may well be unknown to the jury as well. What matters is that the jury was convinced, beyond a reasonable doubt, that appellant was the person who intentionally caused his wife's death, however he did it.

I join the majority opinion.

Filed: March 6, 2013
Publish