IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1889-11






DAVID LEN MOULTON, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SIXTH COURT OF APPEALS


CASS COUNTY





 Cochran, J., filed a concurring opinion.


O P I N I O N 



 I agree that the trial judge did not err when he instructed the jury on the "unknown"
manner and means of committing murder. I write separately because I believe that this area
of law has become overly formalististic and divorced from its original purpose of giving
notice to the defendant. 

 The common-law rule (1) of including an allegation of a "manner and means unknown
to the grand jury" in an indictment when no one knows exactly how an offense was
committed ensures that the State gives the defendant as much notice as it can about its theory
of how the crime was committed. The rule discourages the State from either hiding evidence
from the grand jury or conducting a lackadaisical investigation before seeking a grand jury
indictment. As was explained in the 1883 case, Walker v. State, the State need not allege the
specific manner and means by which the defendant purportedly murdered someone if the
indictment states that the "murder was committed 'in some way or manner, and by some
means, instruments and weapons, to the [grand] jurors unknown.'" (2) 

 Few Texas cases explain the purpose or genesis of this policy, but one of the cases that
the Walker court relied on was People v. Cronin, (3) an 1867 California Supreme Court decision
in which the "flimsy" historical purpose for the rule was addressed:

 The only reason assigned by the common law why the manner and means by
which the homicide was committed should be stated in the indictment, was that
the defendant might be fully informed as to the case against him, and thereby
enabled to prepare for his defense. As we had occasion to remark in the case
of The People v. King, . . . this reason of the common law was but a flimsy
pretext, for if the defendant was guilty, he stood in no need of information as
to the means by which he committed the crime; and if not guilty, the
information that he did the act in a particular way, or by the use of particular
means, could not assist him in the preparation of his defense. Hence, in the
legislation of this State, and in the practice of this Court, the rules of the
common law, in respect to indictments, have been more and more relaxed as
occasion has suggested. (4) 

It took more than 100 years, but now the Texas indictment rules have also been relaxed, both
by constitutional amendment and by statute. (5) 

 The original rule was simple in theory and in practice: If, after making a diligent
inquiry, the grand jury cannot determine precisely what was the manner (the actus reus-
shooting, poisoning, hitting, stabbing, strangling) of the offense or the means (the
instrument-gun, sword, knife, hands, manhole cover) that the offender used to commit the
offense, just say so in the indictment. Do the best you can; that is good enough. In the past,
we should not have made a mighty mountain out of a pleading molehill. We do not do so in
these times.

 If the defendant is flummoxed by the failure to have greater notice, he may file a
motion to quash the indictment and put the State to its burden to show that it still does not
know the precise manner and means. If the State does have more information about the
manner and means (or at least has a more precise range of possibilities), then it must give the
defense notice of that evidentiary information. If, at the motion to quash hearing, it turns out
that the State now knows exactly what manner and means it intends to prove, the trial judge
may order the State to amend the indictment or seek a new one that is more specific.

 Regardless of whether the defendant files a pretrial motion to quash the indictment,
if the evidence at trial clearly establishes a specific manner and means, or a combination of
various alternatives, then the judge should omit the "unknown" language in his jury charge. 
Instead, as the majority states, the jury charge should be written to give the jury a choice from
the limited list of possibilities regarding manner and means. (6) If, after considering all of the
evidence adduced, the precise manner and means still cannot be identified, as in this case,
the judge should leave the "unknown" language in the jury charge. Here, no one, including
the medical examiner, could be certain of the specific manner of Rebecca Moulton's death;
it was "some sort of asphyxia," but that was as good as the witness and the science could tell. 
If the precise manner and means cannot be determined by the medical examiner, then we
have to be satisfied that the manner and means may well be unknown to the jury as well. 
What matters is that the jury was convinced, beyond a reasonable doubt, that appellant was
the person who intentionally caused his wife's death, however he did it.

 I join the majority opinion.

Filed: March 6, 2013

Publish
1. Although the Code of Criminal Procedure requires the State to include a description of
unknown persons and property, as well as a statement that the precise name of the person or
property is unknown to the grand jury, in its indictments, there is no such statutory requirement
for the unknown "manners and means" by which an offense is committed. See Tex. Code Crim.
Proc. arts. 21.08 & 21.09. 
2. 14 Tex. App. 609, 627 (1883). 
3. 34 Cal. 191 (Cal. 1867). Cronin had argued that

 [t]he Court erred in overruling the demurrer to the first count of the indictment.
This count is the same as if it had merely said, Timothy Cronin killed Julia Cronin
feloniously, etc., but in what manner is not known. It is a mere conclusion; not a
fact is stated-no wound of any kind, nor how the deceased was found, or where;
not even the condition of her remains; in fact, nothing is stated advising the
defendant as to what preparation it was necessary to make in defense. If it was
alleged that she was poisoned, he could have had her disinterred, and her stomach
analyzed; if a gun shot wound, that he never had weapons about him; if a blow or
cut, he could have summoned physicians to show that such a blow or cut would
not produce death; if from strangulation, he would have prepared to meet that
charge. But not a fact is stated, and the defendant is called upon to defend his life,
without knowing what is charged against him.

 . . .

 To hold, then, that an indictment containing no fact is sufficient, because
the Grand Jury could not ascertain the facts, is simply begging the question. If the
Grand Jury could ascertain that the defendant committed the deed, it could have
set forth the facts upon which such a finding was predicated, without which the
indictment stands with simply the fact alleged that defendant committed the
murder. The District Attorney could, under our statute, if there was any doubt as
to the precise mode in which death was produced, have found as many counts as
the exigency of the case required.

Id. at 197-98. 
4. Id. at 200. The California Supreme Court further explained:


 Thus it has been held that a description of the weapon is not necessary,
(People v. Stevenson, 9 Cal. 273) and that it is not material to describe the wound,
further than to say that it was mortal, or that the party died of the wound. (People
v. Judd, 10 Cal. 313.) While it may be well to state the means by which death
was caused, we do not consider such a course indispensable. The killing is the
ultimate and issuable fact, and we can perceive no satisfactory reason why the
means by which it was done should be stated in every case, and certainly not in a
case where the means are unknown. In this case, as yet, the means by which the
homicide was committed lie mainly in conjecture. True, the Grand Jury might
have multiplied counts until all possible modes and means of inflicting death yet
discovered had been described; but to what good purpose? The defendant, in that
case, would have obtained no valuable information. He would have been as little
informed as to the real means as he is by the present indictment; and yet the one or
the other course must be adopted, where the means are unknown, for the criminal
cannot be allowed to escape justice because the precise means by which the crime
was committed cannot be discovered.

Id. The California Court also referred to the "famous" 1850 Webster case from Massachusetts, in
which the Massachusetts Supreme Court explained the common-law "unknown manner and
means" indictment rule:

 To a person unskilled and unpractised in legal proceedings, it may seem strange
that several modes of death, inconsistent with each other, should be stated in the
same document. But it is often necessary; and the reason for it, when explained,
will be obvious. The indictment is but the charge or accusation made by the grand
jury, with as much certainty and precision as the evidence before them will
warrant. They may be well satisfied that the homicide was committed, and yet the
evidence before them may leave it somewhat doubtful as to the mode of death;
but, in order to meet the evidence as it may finally appear, they are very properly
allowed to set out the mode in different counts; and then if any one of them is
proved, supposing it to be also legally formal, it is sufficient to support the
indictment.

 . . . 

 The rules of law require the grand jury to state their charge with as much certainty
as the circumstances of the case will permit; and, if the circumstances will not
permit a fuller and more precise statement of the mode in which the death is
occasioned, this count conforms to the rules of law. I am therefore instructed by
the court to say, that, if you are satisfied upon the evidence, that the defendant is
guilty of the crime charged, this form of indictment is sufficient to sustain a
conviction.

Commonwealth v. Webster, 59 Mass. (5 Cush.) 295, 322-23 (Mass. 1850).
5. See generally Studer v. State, 799 S.W.2d 263, 267 (Tex. Crim. App. 1990) (setting out
prior cases and noting that, before the 1985 constitutional and legislative changes, "[a] substance
defect was considered 'fundamental error' since a charging instrument with such a defect failed
to confer jurisdiction upon the trial court, and any conviction had upon that instrument was
therefore void. Also apparent from the caselaw is that this Court has used the terms 'substance
defect,' 'fundamental error,' and 'fatally defective' interchangeably when addressing errors in
charging instruments which led to void convictions.").
6. Majority op. at 12 (noting that, in Sanchez v. State, 376 S.W.3d 767 (Tex. Crim. App.
2012) (op. on reh'g), there was a "limited list of known alternatives" that could explain the
victim's cause of death).