No. 10,673—In Bank.
Sept. 20, 1882.

## THE PEOPLE *v.* HONG AH DUCK.

INDICTMENT FOR MURDER.—It is not necessary, in an indictment or information for murder, to set forth and describe the weapon used and the wound inflicted or the other means employed to take human life.

MURDER—EVIDENCE—THREATS.—Testimony as to threats made by defendant, charged with homicide, against the deceased, is competent, though made a long time prior to the commission of the homicide.

ID.—ID.—EXPERT.—The evidence of a witness, though not an expert, is admissible to describe a wound inflicted by a knife on the hand of the deceased, and which he saw.

ID.—ID.—BLOODY CLOTHING—RES GESTÆ.—The bloody clothing worn by the deceased at the time of the homicide is admissible in evidence, and sometimes may be important as a part of the *res gestæ*.

ID.—ID.—PENALTY.—The defendant, at the time of the homicide, was a convict in the penitentiary, and the prosecution was permitted to prove, over the objection of the defendant, that he was sentenced for life. The

| | |
|---|---|
| 61 | 387 |
| 78 | 44 |
| 78 | 90 |
| 61 | 387 |
| 80 | 165 |
| 80 | 306 |
| 61 | 387 |
| 81 | 143 |
| 61 | 387 |
| 99 | 3 |
| 61 | 387 |
| 106 | 476 |
| 61 | 387 |
| d112 | 423 |
| 61 | 387 |
| 117 | 65 |
| 61 | 387 |
| 122 | 143 |

evidence was not offered as affecting in any manner the question of the defendant's guilt, but such a purpose was disclaimed by the prosecution and was clearly guarded against by the instructions to the jury. The object of the evidence was simply to get the jury to understand, that, if they found the defendant guilty of murder in the first degree and fixed his punishment at imprisonment for life, which they could do under the provisions of the Penal Code, there would be no addition to the punishment to which the defendant was already condemned under a former conviction.

*Held:* The evidence was admissible. In order to exercise the discretion vested in them as to the penalty in a wise and intelligent manner, the jury should be put in possession of all the facts in the case, and if it be true—as it was in respect to this defendant—that a verdict fixing the punishment at imprisonment for life would in fact be no punishment at all, it was proper to inform the jury of that fact.

ID.—EXCLUSION OF WITNESS.—It was within the discretion of the Court to permit a witness to remain in the Court-room after the other witnesses had been excluded.

ID.—ADMISSIONS—TESTIMONY BEFORE CORONER.—Where a defendant has offered himself as a witness in the case, a statement made by him at the Coroner's inquest is admissible in evidence for the purpose of contradicting his testimony.

ID.—INSTRUCTIONS.—The Court is not bound to state the law to the jury more than once.

ID.—ID.—BURDEN OF PROOF—JUSTIFICATION OF HOMICIDE.—Section 1105, Penal Code, which throws on the defendant the burden of proving circumstances in mitigation or circumstances that justify or excuse the killing, in certain cases, requires that the proof on the part of the defense shall be in some degree stronger than the proof on the other side; or, in other words, that it must preponderate.

APPEAL from a judgment of conviction, and from an order denying a new trial, in the Superior Court of the County of Marin. BOWERS, J.

*H. H. McJunkin* and *T. J. Crowley,* for Appellant.

*A. L. Hart,* Attorney-general, for Respondent.

MORRISON C. J:

The defendant was prosecuted by information for the crime of murder, and was convicted of that crime in the first degree. The jury failed to fix the punishment, and sentence of death was passed on him by the Court. The record presents a great many exceptions taken to the rulings of the Court, during the progress of the trial, and also several exceptions relating to

instructions given and refused, which we will notice in the
order in which they are presented.

But the first point in the case relates to the sufficiency of
the information.    It fails to state the means by which the de-
fendant took the life of Ah Mow, the deceased—whether the
homicide was perpetrated by shooting, stabbing, poisoning or
otherwise.    In all other respects the information is sufficiently
certain, and clearly charges an act of murder in the first de-
gree.    The question then arises, is it necessary for the plead-
ing, whether it be an indictment or an information, to set
forth and describe the weapon used and the wound inflicted,
or the other means employed to take human life ?    This ques-
tion has been considered in several cases in this State, and in
all of them it has received a negative answer.    The question
of the sufficiency of an indictment under our Criminal Code
was fully considered by Sanderson, C. J., in the case of *People
v. King,* 27 Cal. 511; and it is there said :    " Under the pre-
tense of informing the defendant of the nature of the charge
against which he was called upon to defend, it was necessary
at the ancient common law, to describe the means by which
the homicide was committed and the nature and extent of the
wound and its precise locality ; from which it necessarily
followed that a trifling variance between the proof and the
allegation frequently defeated a conviction, no matter how
manifest the guilt of the defendant.    It was a long time be-
fore legislators and Judges discovered that this rule had noth-
ing but the most flimsy pretext to support it.    If the defend-
ant is guilty, he stands in need of no information to be derived
from a perusal of the indictment, as to the means used by him
in committing the act, or the manner in which it was done,
for, as to both, his own knowledge is quite as reliable as any
statements contained in the indictment.    If he is not guilty,
the information could not aid in the preparation of his de-
fense."    The learned Judge then proceeds to discuss the re-
laxation of the common law rule, and to show what is neces-
sary for an indictment to contain under the new system of
rules introduced by the Criminal Code.

The case of *The People* v. *Cronin,* 34 Cal. 191, is to the
same effect, and it was there held that an indictment charg-
ing the homicide to have been committed " by some means,

instruments, and weapons to the Grand Jury unknown," was sufficient. The doctrine of the *Cronin Case* is sustained by the later case of *The People* v. *Martin*, 47 id. 101, and we see no good reason for rejecting it at this late day. Section 960 of the Penal Code declares that "no indictment or information is insufficient    *    *    by reason of any defect or imperfection in matter of form, which does not tend to the prejudice of a substantial right of the defendant, upon its merits." We are of the opinion that the information substantially conforms to the requirements of the Code, and that the demurrer thereto was properly overruled.

2. The second question in the case relates to the admission in evidence of certain threats made by the defendant against the deceased. The witness testified that the defendant held up a dead chicken in his right hand and said : "If I don't kill Ah Mow, I am dead like this chicken." The witness does not state the precise time when this threat was made, but simply says, "I could not tell the exact date—about a month before he killed Ah Mow."

We do not understand upon what principle of law such evidence could be considered incompetent; and that it was clearly admissible might be shown by a large number of adjudged cases. "The testimony as to the threats made by the defendant was competent, notwithstanding they were made a long time prior to the commission of the homicide. Testimony of that character was admissible for the purpose of showing malice; and its competency is unaffected by the lapse of time, though its weight may be impaired." (*People* v. *Cronin, supra,* and cases referred to therein.)

3. An effort was made on behalf of the defense to show that a certain Chinaman of the name of Ah Pon was known by the name of China Tom, and also by another opprobrious name. Objection was made to the evidence by the prosecution, and the objection was sustained by the Court. It does not appear to us what the object of the defense was in seeking to get the evidence before the jury, and we cannot see what bearing it had upon the case. It was properly excluded.

4. One Thompson was called as a witness on behalf of the prosecution, and was asked to describe a wound which he saw on the hand of the deceased. To this question objection was

made by the defense on the ground that the witness was not
an expert. It was not necessary that he should have been
an expert in the matter of wounds. He was simply asked to
describe a wound inflicted by a knife on the hand of the de-
ceased, which wound, he, the witness, saw, and there was no
legal objection to his describing it.

5. The bloody shirt of the deceased was offered in evidence
by the prosecution, against defendant's objection. It is a
practice, not at all uncommon, to offer in evidence the bloody
clothing worn by the deceased at the time of the homicide,
and sometimes it may be important evidence in the case, as a
part of the *res gestæ.*

6. We now come to a point in the case upon which serious
doubts were entertained by us for a time, but after examina-
tion and reflection, we have been enabled to arrive at a satis-
factory conclusion respecting it. It had already appeared in
the case that both the defendant and the deceased were in-
mates of the State Prison; that upon the day of the homi-
cide the defendant had been engaged in the performance of a
certain labor task, imposed upon him in company with other
convicts; that the term of service of the deceased had nearly
expired—but what the term of defendant's sentence was had
not appeared. The prosecution then offered to show that the
defendant was a life-long convict; to the introduction of evi-
dence on this point, defendant, by his counsel, objected. A
very lengthy argument then ensued, for and against the in-
troduction of the evidence, and the result was a decision of
the Court below in favor of its competency. This ruling is
assigned as error.

The evidence was not offered as affecting in any manner the
question of defendant's guilt; such a purpose was disclaimed
by the prosecution, and was clearly guarded against by in-
structions of the Court to the jury. The object of the evi-
dence was simply to give the jury to understand that if they
found the defendant guilty of murder in the first degree, *and
fixed his punishment at imprisonment for life* (which they
could do under the provisions of the Penal Code), there would
be no addition to the punishment to which the defendant was
already condemned, under a former conviction. The Court
instructed the jury that they could not find the defendant

guilty of any crime if they had a reasonable doubt of his guilt, and explained the meaning of the term reasonable doubt, as the same was defined by the learned Chief Justice Shaw in the *Webster Case*. The Court further told them that if they believed the defendant guilty of murder, but had a reasonable doubt as to the degree, whether murder in the first degree or in the second, it was their duty to find him guilty of the lesser of the two offenses. The charge in respect to the degree of crime of which the defendant might be found guilty, and the measure of proof required to establish his guilt, was very clear, full, and satisfactory, and there remains for our consideration simply the question of alleged error claimed to have been committed by allowing the prosecution to prove the prior conviction and sentence of the defendant to a lifelong term in the State Prison.

The question is a new one in this Court, and we are not aware of any direct authority upon it. The nearest approach to it which we have been able to find is the case of *Fields* v. *The State*, 47 Ala. 603, and the case of *Kistler* v. *The State*, 54 Ind. 400. In the *Field Case* it was held, that, "on a trial on an indictment for murder under the statutes of that State the jury are not only required to pass upon the guilt or innocence of the accused, but also, on conviction, to find by their verdict whether it be murder in the first or second degree, and determine the character, the extent, and severity of the punishment to be inflicted. Evidence, therefore, of the general bad reputation of the deceased, as a turbulent, bloodthirsty, revengeful, dangerous man, is competent, relevant and proper evidence, although under the circumstances of the particular case it may not be sufficient to reduce the offense from murder to manslaughter, to enable the jury to determine the degree of the offense, and the character and measure of the punishment." In the above case it was held that under the Alabama statute, it was permissible to go into a collateral inquiry for the purpose of aiding the jury in determining the degree of punishment. That statute is similar to ours, leaving the matter of punishment within the discretion of the jury, in cases of conviction of murder in the first degree.

The case of *Kistler* v. *The State*, 54 Ind. 400, has some bearing on the question now under consideration. The Court

there says: "According to the old law, all the jury had to do was to determine the question of guilt or innocence. It was the duty of the Court, after a verdict of guilty, to declare the punishment which the law imposed. If any discretion was permitted as to the punishment, that discretion was exercised by the Court alone. Circumstances, whether in aggravation or mitigation, were considered by the Court when brought to its attention by the evidence. We think it still the correct practice, where it devolves on the Court to determine the punishment, either upon its own finding or on a plea of guilty, for it to hear evidence in aggravation or in mitigation, as the case may be, where there is any discretion as to the punishment.

"In our present Criminal Code it is enacted that, 'When the defendant is found guilty, the jury must state in their verdict the amount of fine and the punishment to be inflicted.' (2 R. S., 1876, p. 404, § 116.)

"This is, in substance, a re-enactment of what has long been the law in our State. Hence, our juries, in criminal causes, are not only required to determine the punishment, where there is a verdict of guilty, but are also invested with all the discretionary power in regard to such punishment, that formerly belonged exclusively to, and which, under certain circumstances, is still exercised by the courts. While punishing the guilty, they are, equally with the courts, required to see to it that no cruel and unusual punishments are inflicted, and that all penalties are proportioned to the nature of the offense.

"In considering the question of the nature or the extent of the punishment, the juries are now fairly entitled to all the latitude which the courts have rightly exercised, in hearing evidence tending to enlighten them in the exercise of a sound judicial discretion."

In order to exercise that discretion in a wise and intelligent manner, the jury should be put in possession of all the facts of the case; and if it be true, as it was in respect to this defendant, that a verdict fixing the punishment at imprisonment for life, would in effect be no punishment at all, we think it was proper to inform the jury of that fact.

7. The action of the Court in permitting Captain Edgar, a witness in the case, to remain in the Court-room, was simply

the exercise of a discretionary power residing in the Court, and it was not error.

8. Other objections to the ruling of the Court, in admitting in evidence matters which were objected to on behalf of the defense, were not well taken, and it is not necessary for us to consider these matters separately. The statement made by the defendant at the Coroner's inquest was admissible in evidence for the purpose for which it was read, that is to say, for the purpose of contradicting the defendant, who offered himself as a witness in the case.

9. There remains only one more matter to be considered, and that relates to the action of the Court in charging the jury, and in refusing to give certain instructions requested by the defendant. It is unnecessary for us to inquire into the correctness of the instructions refused by the Court, for the reason that the charge was full enough to cover, and did cover, all the points of law applicable to the case, and we have held in several cases that the Court was not bound to state the law to the jury more than once.

The Court instructed the jury as follows: " The killing being proved, the burden of proving circumstances of mitigation to justify or excuse the homicide will devolve on the accused, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the accused was justified or excused in committing the homicide. Up to the moment when the killing is proved, the prosecution must make out its case beyond any reasonable doubt. When the killing is proved, it devolves upon the defendant to show any circumstances in mitigation to excuse or justify by a preponderance of evidence on his part. That is, the killing being proved, the defendant must make out his case in mitigation to excuse or justify by some proof stronger in some appreciable degree than the proof of the prosecution. The burden of proof changes. *. * * It must be in some degree, no matter how small, stronger than the proof of the prosecution on the other side."

It is claimed, on behalf of the defense, that there is error in the foregoing instruction. Section 1105 of the Penal Code provides that " Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of

proving circumstances of mitigation, or that justify or excuse
it, devolves upon him, unless the proof on the part of the
prosecution tends to show that the crime committed only
amounts to manslaughter, or that the defendant was justifia-
ble or excusable."

If the Court had instructed the jury that the *burden of
proof* rested upon the defendant, instead of telling them that
the defendant was required to prove his justification or ex-
cuse by a *preponderance* of evidence, the instruction would
have been in the language of the section of the Code above
cited. Was there any difference in meaning between the in-
struction given and the language of the Code? It is a gene-
ral rule of evidence that an affirmative proposition must be
established by a preponderance of evidence; for, if the evi-
dence on one side is equally balanced by the evidence on the
other, there is a failure of proof, and the requirements of the
law are not complied with. This question has been passed
upon in a number of cases, the first of which we will notice
is that of *The People* v. *Milgate*, 5 Cal. 127, in which the Court
says: "The homicide being admitted or proved, the law raises
the presumption of malice, which it is necessary for the pris-
oner to rebut by proof. Proof beyond a reasonable doubt is
necessary to establish a fact against a prisoner; but prepon-
derating proof, proof necessary to satisfy a jury of the fact, is
sufficient to establish the fact in his favor." The case of *The
People* v. *Stonecifer*, 6 id. 405, is to the same effect, and the
rule is there stated in the following language: "The second
instruction is bad, because, the killing being admitted, the
presumption of guilt arises, and the *onus* is laid upon the
prisoner of disproving the guilt; this can not be done by rais-
ing a doubt in the minds of the jury, but by establishing the
fact by preponderating proof."

In the case of *People* v. *Arnold*, 15 Cal. 476, Mr. Justice
Baldwin says: "When the fact of a homicide is shown, then
it is incumbent upon the defendant to show by a preponder-
ance of testimony that the killing was justifiable." These
cases are to be read in the light of the fact that there is no
evidence in the case made by the prosecution tending to show
a state of facts which justify the killing, or which reduce the
crime to manslaughter. (*People* v. *West*, 49 Cal. 610.) In the

case of the *Commonwealth* v. *York*, 9 Met. 124, Chief Justice Shaw says: "The proof establishing the necessity for taking life, in self-defense, must be satisfactorily made out. Raising a doubt would be insufficient." (See, also, *People* v. *Schryver*, · 42 N. Y. 1.)

But it is unnecessary to pursue this branch of the case any further. We are of the opinion that Section 1105 of the Penal Code, which throws on the defendant the burden of proving circumstances of mitigation or circumstances that justify or excuse the killing in certain cases, require that the proof on the part of the defense shall be in some degree stronger than the proof on the other side; or, in other words, that it must preponderate.

There is no error in the proceedings injuriously affecting any substantial right of the defendant, and the judgment and order are therefore affirmed.

MYRICK, THORNTON, and McKEE, JJ., concurred.