## STATE V. YOKUM.

1. Evidence that deceased was accustomed to carrying firearms is not admissible, except to characterize an assault by him on accused at or about the time of the homicide.

2. A ruling rejecting evidence is not rendered erroneous by the fact that other evidence is afterwards introduced, which renders that rejected admissible. There must be a new offer.

3. Accused testified, on a question of self-defense, that one time, when walking with deceased, the latter said that he would shoot a man rather than let the latter "get the best of him." A question as to what then occurred was barred. *Held*, that there was no error, there having been no offer showing that material facts would have been elicited had the question been answered.

4. What deceased said months prior to the homicide in regard to his carrying firearms is not admissible on a question of self-defense.

5. A charge that, when the killing is admitted, the burden of proving that it was justifiable devolves on accused, does not require that the justification be established beyond a reasonable doubt.

6. Comp. Laws, § 7402, provides that, when the homicide is proved, the burden of proving justification devolves on defendant, unless the state's evidence tends to show that the crime amounts only to manslaughter or was justifiable. *Held* that, where the facts mentioned in the exception do not exist, justiffcation must be established by accused by a preponderance of evidence and it is not enough that the proof raise a reasonable doubt as to the, defense.

(Opinion filed June 16, 1899.)

Error to circuit court, Butte county. Hon. LORING E. GAFFY, Judge.

William D. Yokum was convicted of murder, and he brings error. Affirmed.

The facts are stated in the opinion.

*Joseph B. Moore, Jay I. Woolston,* and *Horner & Stewart,* for plaintiff in error.

It was error for the trial court to exclude evidence of the custom and habit of the deceased of carrying firearms. Riley v. Com., 22 S. W. 222; Garver v. State, 12 So. 638; People v. Harris. 54 N. W. 648; Wiley v. State, 13 So. 424; Garver v. State, 9 So. 835; Jackson v. State, 12 S. W. 501.

It was error for the trial court to exclude evidence as to the general reputation of the deceased for being quarrelsome when under the influence of liquor. State v. Collins, 32 Ia. 36.

The trial court should have instructed the jury as requested by defendant to take into consideration all the evidence elicited from defendant's witnesses as well as that for the prosecution. People v. Hill, 3 N. Y. Sup. 564; Stokes v. People, 53 N. Y. 164; Nevling v. Com., 98 Pa. 322.

The trial court should have instructed the jury as requested by defendant that where there is reasonable ground to believe and the party attacked does believe that there is a design to injure him, that he may kill his assailant even though it afterwards appear that there was no danger. State v. Collins, 32 Ia. 36; People v. Anderson, 44 Cal. 65; Hurd v. People, 25 Mich. 404; Shevlin v. People, 2 N. Y. 193; Patterson v. People, 46 Barb, 625; Logus v Com., 38 Pa. 265; Pond v. People, 8 Mich. 149; State v. Martin, 30 Wis. 216; People v. Doe, 1 Mich. 457; Barr v. State, 63 N. W. 856; Brumley v. State, 17 S. W. 140; State v. Evans, 10 S. E. 792; State v. Donahue, 43 N. W. 297; People v. Hyndman, 33 Pac. 782; State v. Morey, 36 Pac. 573; State v. Reed, 37 Pac. 174; Pastillo v. State 3 S. W. 766; Nalley v. State, 13 S. W. 670; Spearmonk v. State, 4 S. W. 586; Runyon v. State, 57 Ind. 80; Wharton on Hom., 505 *et seq.*

. The trial court should have instructed the jury as requested by defendant that the law does not require a party to avoid danger by flight so long as he is where he has a right to be. Runyon v. State, 57 Ind 80; 1 Bish. Crim. Law, § 855; Beard v. U. S., 15 Sup. Ct. Rep. 962; Willis v. State, 61 N. W. 254; Oakley v. Com., 11 S. W. 72.

The trial court should have instructed the jury as requested by defendant that if the evidence in the case left upon the mind of any juror any reasonable doubt of the defendant's guilt that they could not return a verdict of guilty against the defendant. Davis v. State, 70 N. W. 984; Parker v. State, 35 N. E. 1105; Carter v. State, 15 So. 1893; Aszman v. State, 24 N. E. 124; State v. Phillipps, 2 S. D. 480.

The trial court erred in instructing the jury as to the law governing the amount of evidence necessary to support the plea of justification of self-defense, in charging that when the defendant admitted the killing, as in this case, and set up a plea of justification that the burden of proof shifted to the defendant, without instructing the jury further that when the burden of proof did so shift that it was not incumbent upon the defendant to prove such justification beyond a reasonable doubt, but that if the evidence offered in support of the plea of justification was sufficient to raise a reasonable doubt as to the defendant's guilt that the jury should return a verdict of "not guilty." U. S. v. Crow Dog, 14 Mo. 437; People v. Schryver, 42 N. Y. 4; Snyder v. State, 59 Ind. 105; State v. Cross, 26 N. W. 62; People v. Rodrigo, 11 Pac. 481; People v. Riordom, 22 N. E. 455; Tiffany v. Com., 15 At. 462; People v. Knapp, 11 Pac. 793; People v. Tidwell, 12 Pac. 61; People v. Downs, 8 N. Y. Sup. 521.

*John L. Pyle,* attorney general, and *T. W. La Fleiche,* state's attorney, Butte county, for the defendant in error.

Words alone will not justify a killing. There must be some demonstration which arouses a reasonable belief of imminent peril. 3 Rice on Crim. Ev. 368: Read v. Com., 22 Gratt. 924.

The substance of all the instructions requested by defendant were given by the trial court. When a charge to the jury as a whole is correct, a verdict will not · be disturbed even though detached portions are incorrect. State v. Brennan, 2 S. D. 384; U. S. v. Adams, 2 D. 305; Bartley v. State, 73 N. W. 744; Whitney v. State, 73 N. W. 696; People v. Schwartz, 76 N. W. 491.

No sufficient foundation was laid for the introduction of evidence showing the habit or custom of the deceased of carrying firearms.

CORSON, P. J. Wm. D. Yokum, plaintiff in error, was indicted, tried, and convicted of the crime of murder, and sentenced to imprisonment in the state's prison for the term of his natural life. He brings the case to this court by writ of error issued to the circuit court of Butte county, and relies mainly for a reversal of the judgment of the court below upon alleged errors committed by the trial court in excluding evidence on the part of the plaintiff in error and in refusing and giving instructions to the jury. At the trial the plaintiff in error admitted the killing, and claimed that it was justifiable in defense of his person.

"Justifiable homicide" is thus defined by Section 6464, Comp. Laws: "Homicide is also justifiable when committed

by any person in either of the following cases:   *   *   *   (2)
When committed in the lawful defense of such person, or of his
or her husband, wife, parent, child, master, mistress or servant,
when there is a reasonable ground to apprehend a design to
commit a felony, or to do some great personal injury, and im-
minent danger of such design being accomplished." Section
7402, Comp. Laws, provides as follows: "Upon a trial for
murder, the commission of the homicide by the defendant be-
ing proved, the burden of proving circumstances of mitigation
or that justify or excuse it, devolves upon him, unless the proof
on the part of the prosecution tends to show that the crime
committed only amounts to manslaughter, or that the defend-
ant was justifiable or excusable."

It appears from the evidence in this case that on the first
day of September, 1896, the deceased, one James C. Barnes,
was engaged, in connection with one Sebastian, in keeping a
saloon in the town of Belle Fourche, and the paintiff in error
was a farmer living in that vicinity.   On the afternoon of that
day the plaintiff in error, whom we shall hereafter designate as
the "accused" was frequently in the saloon of the deceased,
and he and the deceased had several drinks together. Between
6 and 7 o'clock the deceased and accused had some words in re-
gard to the throwing of dice (presumably for the drinks), and
the accused thereupon left the saloon, and remained standing
on the sidewalk near the front door.   Within a few minutes
thereafter the deceased stepped to the door, and what then oc-
curred is thus stated by one George E. Hair, a witness on the
part of the prosecution:   "I was living in Belle Fourche, Sep-
tember 1, 1896, and knew Barnes and Yokum.   On September
1st I saw an altercation between them, in the evening, on the

sidewalk in front of Sebastian & Barnes' saloon. Barnes, Yokum, and several others were standing in the doorway of the saloon. Barnes, myself, and a Mr. Lowry started east-ward, when Mr. Barnes turned around quick, and said, 'What's that?' Lowry and I stopped. Barnes walked twenty or twenty-five feet from where he stopped, near where Yokum stood, and, as he walked towards Yokum, Yokum said, 'I didn't mean that for you.' Barnes replied, 'I thought you did.' Yokum again said, 'I didn't mean that for you;' and Barnes made some re-mark to the effect that language like that was generally meant when it was said, or something of that kind, and Yokum raised his hand two or three times. Barnes stood with his hands at his sides or in his pockets, I don't know which; and suddenly I saw Yokum make a lunge with his hand, and I supposed he hit Barnes with his fist in the pit of the stomach, but when he drew his hand back I saw that it contained a knife. Barnes then raised his left hand, and either pushed or grabbed Yokum on the shoulder. In an instant Yokum struck the second blow at Barnes with the knife. It was a single-bladed-pointed knife, six inches long. They clinched and struggled, and Yokum again struck at Barnes with the knife, but it went harmlessly by Barnes' side. When Yokum struck Barnes with the knife, Barnes was standing, making no demonstration. Barnes then ran into the saloon, and Yokum ran across the street." Isaac Lowry testified as follows: "I reside in Belle Fourche. Was here September 1, 1896. Knew Barnes and Yokum. I saw them and others in front of Barnes & Sebastian's saloon that day, about 6 or half past 6 o'clock in the evening. Barnes and I started for a walk. We got probably a rod or so away from Yokum, when he made some noise with his mouth. Barnes

turned around and walked back, and asked Yokum if he meant that for him. Yokum said he did not; that he meant it for some of the other fellows. They stood there looking at one another a little bit. Jim walked up to him, and then Yokum stabbed him with a knife. I saw Yokum strike Barnes twice. I don't know what Barnes done just before he was struck, because I didn't see he done anything. I was'nt watching him. Barnes ran in the saloon then, and Yokum went across the street. When Barnes turned and went back towards Yokum, I heard him say to Yokum, 'If you meant that for me, you will have to fight'" Other witnesses testified to substantially the same state of facts on the part of the state.

After the state had concluded its evidence in chief, one Kittie Lambertson was called as a witness on the part of the accused, and after testifying that she had been acquainted with deceased for about five years, she was asked to state the custom or habit of deceased with reference to carrying firearms. This question was objected to as incompetent, objection sustained, and exception taken. Substantially the same question was repeated in the same form, and the same objection was made, same ruling, and exception taken. Counsel for the accused contend that the court erred in excluding this evidence, and that the error is such as to entitle the accused to a reversal of the judgment in this case. We are of the opinion, however, that the court ruled correctly in excluding this evidence Evidence of the character or reputation of the deceased, or that he was accustomed to carry firearms, is never admissible unless for the purpose of explaining, characterizing, or illustrating an assault or an attack of the deceased upon the accused at or about the time of the homicide. It will be ob-

served that the state, in making out its case, had not introduced any evidence tending to show that the act of the accused was justifiable or excusable, or that an assault or an attack was made upon the accused. It appears, it is true, that the deceased walked 20 or 25 feet, to near where the accused stood, and remarked that language like that used by the accused was generally meant when it was said, or that it meant fight, but that Barnes stood with his hands at his sides or in his pockets when struck by the accused. Certainly, there was nothing in this evidence that could have caused any reasonable ground on the part of the accused to apprehend a design on the part of the deceased to commit a felony upon him or to do him some great personal injury. There was no act of the deceased at that time which the evidence could characterize or explain, and the evidence was properly excluded. The fact that subsequently, in the course of the trial, the accused testified to certain facts tending to show that he had some slight grounds to fear that the deceased intended to do him some great bodily injury, cannot have the effect of making the ruling of the court erroneous when such ruling was correct at the time it was made. After the accused had testified, this witness was not recalled, nor was any evidence of a similar character offered on his part.

The accused was then called as a witness in his own behalf, and after testifying to what was said in the saloon, and as to some words he had with the deceased at the door of the saloon, testified substantially as follows: ''Barnes came out in about a minute, and said, 'You are talking about me.' I said, 'No, sir: I am not.' 'Well,' he says, 'that settles it.' I says, 'That settles it.' Barnes and Ike Lowry started off for a walk. A boy came along, and I made a noise with my

mouth. Barnes whirled around, and said, 'Do you mean that for me?' I said, 'No, sir, I didn't; I meant it for the kid and the boys having fun over there.' Barnes said, if you meant that for me, that means fight,' or 'I mean fight,'—something like that. * * * He came right on to me. He came up within two feet of me, and I kind of stepped back, may be as much as 'a foot. or such a matter; just one foot back. He had a hand kind of in his pocket, and looked me right straight in the eye. I didn't say a word, and he didn't say anything at that time, but he made a kind of a motion with his hand, like he was going to put it in his hip pocket; so at that time I grabbed at his arm, and jerked the knife at the same time, and stabbed him. * * * He was about eight or ten feet away when he made those remarks that it meant fight, and kept coming right towards me, and grabbed at me with his left hand. I thought I seen the butt end of a revolver. I would'nt swear positively, but I thought I seen one. When he raised his hand to his hip pocket before I grabbed at my knife, I thought I seen it, and before I jerked my knife. I pulled my knife to protect myself. I did not strike Jim Barnes with the intention or purpose of killing him. I aimed to stop him. Had no unkind word whatever, and entertained no unkind feeling towards him. Had no desire whatever to take his life, and didn't intend to. I struck him for the purpose of stopping him from killing me or doing me bodily harm. I was afraid of him shooting me, because one time, when we was out walking, he told me he never let a man get the best of him that way. I knew of Barnes carrying a revolver or pistol. We were out walking one time upon the hill, the other side of the flume there and he said, 'I will just take a shot at him.'" He was then

asked what occurred when out walking. This was objected to, and the objection sustained. There was no error in excluding this question. It does not appear that this evidence would have been in any way material, as no offer was made showing that any material facts could have been elicited had the question been answered. He was further asked what, if any, firearms did he exhibit at that time; also, he was asked to state if at that time he said anything to him about the custom or habit of the deceased always carrying a firearm or pistol, and not taking the worst of it; also if he ever saw the deceased have firearms or a revolver on his person in his brother's saloon, in Butte county, during that summer; also, if at that time the deceased exhibited to him any firearms, and made any statement with reference to his habit or custom or practice of always carrying a revolver, referring to it as a friend. Prior to this question being asked, the accused had been allowed to testify that he knew deceased carried a revolver or pistol. What the deceased may have said months prior to the homicide, in regard to his carrying firearms, was clearly not competent evidence. While the prosecution is presumed to be able to meet testimony as to the general reputation of the deceased or his general practice or habit of carying firearms, it could not be presumed to be able to disprove conversations claimed by the accused to have been had with the deceased, and such evidence would not tend to prove that at the time of the homicide he was in the habit of carrying firearms. We are of the opinion that the court properly excluded this evidence. It may be proper to add that there was evidence on the part of the prosecution, in rebuttal, tending to disprove the testimony of the accused as to the fact that the deceased had a pistol on

his person at the time of the homicide, and that he attempted to put his hand in his hip pocket, and other alleged facts testified to by the accused.

At the close of the trial, counsel for the accused submitted to the court 27 instructions, of which the court gave to the jury 14, and refused to give the other 13. It is now contended by counsel for accused that the court erred in refusing to give the requested instructions. But, after a careful examination of the instructions given, the charge of the court given on its own motion, and the instructions refused, we are satisfied that the court committed no error in refusing to give the instructions asked by counsel, and marked "refused." Many of the instructions the court was requested to give were substantially embodied in the instructions given or in the charge of the court given on its own motion, and we find no instruction among the refused that was not in some form substantially given to the jury.

Upon the subject of justifiable homicide, a number of instructions were given, among which is No. 15, which reads as follows: "The court instructs the jury that the law is, if a person is assaulted in such a way as to induce in him a reasonable belief that he is in actual danger of losing his life, or of suffering great bodily harm, he will be justified in defending himself, although the danger be not real, but only apparent. Such a person will not be held responsible criminally if he acts in self-defense, from real and honest convictions as to the character of the danger, induced by reasonable evidence, although he may be mistaken as to the extent of the actual danger. A person need not be in actual imminent peril of his life or of great bodily harm before he may slay his assailant. It is sufficient if, in

good faith, he has a reasonable belief, from the facts as they appear to him at the time, that he is in such immineut peril." It will be seen that this instruction is as favorable to the ac cused as the law authorizes, and covers every possible phase of the defense of justifiable homicide. Many of the instructions were of a similar character, with a slight change in the phrase-ology.

The court in charging the jury upon his own motion as to the burden of proof upon the subject of justifiable homicide. uses the following language: "In this case, if the killing by the defendant be proven, as I have before stated to you, the burden of proving that it was justifiable or excusable devolves upon the defendant, unless the facts proven tend to show that the crime only amounts to manslaughter or that the defendant was justifiable or excusable. The homicide being proven, if you should believe at the time of the alleged assault the circum-stances surrounding the defendant were such as would justify or induce in his mind an honest belief that he was in danger of receiving from the deceased some great bodily harm, and that in doing what he did he was acting from an instinct of self-preservation, if you should find this and believe this from the testimony, then the defendant would not be guilty of the crime charged." As to this part of the charge counsel for the ac-cused contends that "the court erred in instructing the jury as to the law governing the amount of evidence necessary to sup-port the plea of justification or self-defense in charging that when the defendant admitted the killing, as in this case, and set up a plea of justification or self-defense, that the burden of proof shifted to the defendant, without instructing the jury, further, that when the burden of proof did so shift, that it was

not incumbent upon the defendant to prove such justification by evidence beyond a reasonable doubt, but that if the evidence offered in support of the plea of justification was sufficient to raise a reasonable doubt as to the defendant's guilt, that the jury should return a verdict in this case of 'Not guilty,' as requested by counsel for defendant at the time of making the exceptions; to all of which the defendant duly excepted at the time of the trial." It will be observed that the language of the court is, "the burden of proving that it was justifiable or excusable devolves upon the defendant," and that this is substantially the language of the statute heretofore quoted. The contention of counsel for the accused seems to be that this language of the court implies that the burden of proving that the killing was justifiable should be established by the accused beyond a reasonable doubt, But, in our view, the language of the court is not susceptible of such a construction. Its fair import is that the proof on the part of the accused should preponderate in favor of the defense, and we think it must have been so understood by the jury, If this construction of the court's language is correct, and we think it is, the law governing the proof required as to the defense of justifiable homicide was strictly correct. In this class of cases it is not sufficient that the proof as to the justification raise a reasonable doubt in the minds of the jury, as contended by counsel for the accused, but there must be a preponderance of evidence to support the defense. In the earlier cases the courts required evidence to prove the justification to be such as to satisfy the jury beyond a reasonable doubt that the killing was excusable. These cases are collected in the brief of counsel in the case of People v. Schryver, 42 N. Y. 4. The trial court in that case charged the jury as

follows: "It is for the prisoner to satisfy the jury beyond a reasonable doubt that he did apprehend, and had reason to apprehend, that he was in imminent danger of his life, or of the infliction of some great personal injury.' If the evidence falls short of this, and only raises a doubt whether or not the prisoner stood in fear of his life or his person, that is not sufficient to acquit the prisoner. The evidence must go one step further, and satisfy this jury, beyond reasonable doubt, on this point." The court of appeals in New York, through EARL, C. J., held that the instruction of the court was erroneous, and affirmed the general term of the supreme court reversing the judgment of the trial court. The statute at that time defining "justifiable homicide" was substantially, if not identically, the same as Section 6464, Comp. Laws, and they also had a section similar to Section 7402 of our statute. In that case the court said: "The people, in every case of homicide, must prove the *corpus delicti* beyond a reasonable doubt, and, if the prisoner claims a justification, he must take upon himself the burden of satisfying the jury by a preponderance of the evidence. He must produce the same degree of proof that would be required if the blow inflicted had not produced death, and he had been sued for assault and battery, and had set up a justification. When a man takes human life, upon which the law sets a high value, it is not sufficient for him to raise a reasonable doubt whether he was justifiable or not, but he must go one step further, and give satisfactory evidence that he was justified. This rule is sufficiently humane to the prisoner, and at the same time gives some protection to human life." The supreme court of California, in People v. Hong Ah Duck, 61 Cal. 387, have given the same construction to the sections defining "justifiable homicide" and

"burden of proof," which are the same as the sections in our own Penal Code and Code of Criminal Procedure. In that case the court says: "If the court had instructed the jury that the burden of proof rested upon the defendant, instead of telling them that the defendant was required to prove his justification or excuse by a preponderance of the evidence, the instruction would have been in the language of the section of the code above cited. Was there any difference in meaning between the instruction given and the language of the code? It is a general rule of evidence that an affirmative proposition must be established by a preponderance of evidence; for, if the evidence on one side is equally balanced by the evidence on the other, there is a failure of proof, and the requirements of the law are not complied with. This question has been passed upon in a number of cases, the first of which we will notice is that of People v. Milgate, 5 Cal. 127, in which the court says: "The homicide being admitted or proved, the law raises the presumption of malice, which it is necessary for the prisoner to rebut by proof. Proof beyond a reasonable doubt is necessary to establish a fact against a prisoner; but preponderating proof—proof necessary to. satisfy a jury of the fact—is sufficient to establish the fact in his favor." The case of People v. Stonecifer, 6 Cal. 405, is to the same effect, and the rule is there stated in the following language: "The second instruction is bad, because, the killing being admitted, the presumption of guilt arises, and the onus is laid upon the prisoner of disproving the guilt, This cannot be done by raising a doubt in the minds of the jury, but by establishing the fact by preponderating proof." In the case of People v. Raten, 63 Cal. 421, the supreme court of California again lays down the doctrine as announced in People v. Hong

Ah Duck, *supra.* In that case the following instruction to the jury was held to be correct: "Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or exusable, and this he may show by preponderance of evidence merely." And the court says: "It is urged that this direction is erroneous, because it deprives the defendant of the doctrine of reasonable doubt. We have to say in reply to this, that the jury was fully and correctly instructed upon the question of reasonable doubt, and that the instruction above given was approved by this court in bank in People v. Hong Ah Duck, 61 Cal. 387." The late supreme court of the Territory of Dakota, in U. S. v. Crow Dog, 3 Dak. 106, 14 N. W. 437, lays down substantially the same doctrine. Tested by these decisions, the instruction given by the learned circuit court was correct. We are satisfied that, under the evidence in this case, the verdict of the jury was the only one that could properly have been found, and we find the instructions of the court were exceedingly favorable to the accused. There being no error in the record, the judgment of the circuit court is affirmed.